# DECISIONS

## OF THE

# SUPREME COURT OF MISSOURI.

## FIRST JUDICIAL DISTRICT.

### AUGUST TERM 1840.

---

### FERGUSON v. HUSTON.

1. Defect or unsoundness in a chattel sold cannot be set up in bar of a recovery on a note given for such chattel, unless the vendee, on the discovery of such defect or unsoundness, returns or offers to return the chattel purchased, or shews it to be valueless. Napton Judge dissenting on this point.
2. The 7th section of the 5th article of the act relating to justices' courts, (R. C. 1835, p. 359,) is applicable only to suits instituted before a justice of the peace.

Appeal from Circuit Court of Cooper County.

*Adams and Hayden for Appellant.*

1st. That a partial as well as a total failure of consideration is a defence in an action on a note for the purchase money of an article sold—to defeat the recovery in whole or in part. 2nd Kent Com. 473–4, third edition. 8, Cowen 31. 8 J. R. 452. 14 J. R. 377. 9 J. R. 232. 15 J. R. 230. 6 Pickering Rep. 427. Fegan vs. Meredith 4th Mo. Rep. 514.

2nd. That the instruction given by the court required that the defendant should have given notice of the defects in the carriage to the plaintiff, and in this it was calculated to mislead the jury 2 Pirtle's digest 240–1.

3rd. That the plaintiff was an assignee of the note sued on, and against him the defendant could make the same de-

B2

fence, that he could against tha payees befcre assignment, and to do this he was not required to give the assignee notice of the defects, as set forth in the instruction. See laws of Missouri, digest 1835, title, bonds and notes, page 104-5.

*Miller and Leonard, for Appellee.*

1st. That evidence in mitigation of damages for a breach of warranty in the sale of a chattel, or for a partial failure of consideration in cases not tainted with fraud, is inadmissible and should have been rejected by the circuit court in this case. See 12 Wheaton 183. Thornton vs. Wynne, cited n condensed Rep's, vol. 6 p. 509, and cases cited. 1st Dana's Rep's 273. Lightburn vs Cooper. 1st Littell, Allison vs. Noble page 279.

2nd. That fraud in the sale of a chattel cannot be set up in bar of a recovery of a note given on such sale unless the vendee, on the discovery of the fraud returns the article purchased, to the vendor, or shews it to be entirely destitute of value. See 3rd Wendell, Benton vs. Stewart, page 236.

3rd. That in this case, evidence in mitigation of damages is wholly inadmissible, as there was no evidence of any notice having been given by the defendants to the payees, of such insufficiency. See 3 Wendell, Benton vs. Stewart page 236. Chitty on Contracts, p. 168.

4th. That the court very properly overruled the instructions prayed for by defendant, and very properly overruled the motion for a new trial and in arrest of judgment.

*Opinion of the Court delivered by Tompkins Judge.*

Huston assignee of J. L. and Milton Matthews brought his action of debt against Ferguson on a note made by said Ferguson to said J. L. and Milton Matthews.

The circuit court gave judgment against Ferguson; and to reverse that judgment this appeal is prosecuted.

On the trial of the cause, after the plaintiff had given the note in evidence, the defendant introduced evidence to prove that the payees of this note were carriage makers, and that he was a carrier of the mail from Jefferson City to Boonville in Cooper county, his residence, and that the payees re-

sided in Columbia in Boone county: and that the defendant in the fall of the year 1837, applied to the payees to make him a two horse mail coach; that they undertook to make him a coach suitable for carrying the mail on said route, for three hundred dollars: that whilst they were making said coach, they were informed by the smith that the irons were too light and weak; and that said coach, when it was delivered to the defendant, had on it a thick coat of paint, calculated to hide its defects; and that after performing one or two trips, as a stage coach, it became so wrecked as to be unfit for use. The plaintiff gave some rebutting evidence.

The defendant in the circuit court, appellant here, asked of the circuit court several instructions, which are in substance as follows:

1st. If they believe from the evidence, that the note sued on was made in consideration of a carriage manufactured by the payees of said note for said defendant, for the purpose of a mail coach; and if they also find that said carriage was worth nothing, then they must find for the defendant.

2nd. If they find that the consideration has wholly failed, they must find for the defendant.

3rd. If they find a partial failure of the consideration of said note, then they must deduct the amount of such failure from the amount of such note.

4th. If they find that the carriage aforesaid was made for a mail coach, by the payees, and that it formed the consideration of said note, and that said carriage did not answer the purpose for which it was made, and that the defendant offered to return the same in a reasonable time to the payees after it had come into his possession, then they must find for the defendant.

5th. If they find that the payees of the said note were carriage makers, and as such made and sold the said carriage to the defendant, for the purpose of a mail coach, that in such case there was an implied warranty on the part of the payees, that the said carriage would answer the purpose for which it was made and sold, and if they further find that the carriage did not answer the purpose aforesaid, then the

said payees are liable to the said defendant upon their war-- ranty aforesaid, and that the amount of the said damages are to be taken into consideration by the jury, and deducted from the amount of the recovery by said plaintiff upon said note.

6th. That although the defendant did not offer to return the said carriage in a reasonable time, and although he gave no notice of its defects to the payees of the note, yet if the jury find that it was purchased for a mail coach, and formed the consideration of the said note, and if they further find that it was made and sold to the defendant by the payees aforesaid as carriage makers, and if they further find that said carriage did not answer the said purpose, then they must take into consideration such defects, and deduct the amount of the same from the plaintiff's recovery.

The circuit court refused to give any of the instructions above prayed.

The circuit court having refused the instructions asked above, gave these following.

1st. If the jury believe that the work was fraudulently executed, or that it was done by contract for a certain pur-- pose and failed to answer the purpose for which it was de- signed, and shall further find that it was wholly worthless, they will find for the defendant.

2d. But if the jury believe the work was worth any thing, and that the defendant has failed to give notice of its defects, in a reasonable time to the plaintiff, or to return the same, then he is to be presumed to have acquiesced in the defect of the work, and is not entitled to any deduction from the amount of the note.

The instructions given by the court were excepted to, and the refusal of those asked was also excepted to. A new trial was also asked and refused. The reasons assigned for asking a new trial, were that the court had erred, both in giving and refusing instructions as above mentioned.

So much of the instructions asked by the defendant, and so much of those given by the court, as relates to the neces- sity of an offer to return the carriage to entitle the defend- ant to a verdict, is not warranted by the evidence in the

cause; there being no evidence given that the defendant did offer to return it.

The points material to a correct decision of this cause are;

1st. If the carriage be worth any thing, can the defendant avoid the payment of his note without either returning or offering to return the carriage within a reasonable time after the discovery of the unfitness of said carriage for the purpose for which it was constructed?

2nd. Is the defendant entitled to a set-off against his note for any omission of the payees to execute the work faithfully and skillfully?

It is admitted by the counsel for the appellee, plaintiff in the circuit court, Huston, that there are authorities on each side; but as those authorities are diligently collected by the respective counsel, and will be, under the provisions of the statute, printed along with this opinion, I shall not review them, but content myself with giving my reasons for my own opinion. To this method I am the more inclined, because, the court, at this term, consists of only two judges, and they differing in opinion, the judgment of the circuit court is affirmed by operation of law.

We learn from Bacon that "At common law, if the plain-"tiff was as much or even more indebted to the defendant, " than the defendant was indebted to him, yet he had no " method of striking a balance; the only way of obtaining " relief was to go into a court of equity. To remedy this " inconvenience, it was enacted by statute 2d of George 2, ".that where there were mutual debts between the plaintiff " and defendant, or if either party be sued as executor or ad- " ministrator, where there are mutual debts between the " testator or intestate, and either party, one debt may be set " off against the other; and such debt may be given in evi- " dence on the general issue or pleaded in bar, as the nature ".of the case shall require, so as at the time of pleading the " general issue, where any such debt of the plaintiff, his tes- " tator or intestate, is intended to be insisted on in evidence, " notice shall be given of the particular sum or debt intend- " ed to be insisted on, and upon what account it became due, &c." 6 Bacon, title set-off, letter A.

At letter C. in the same title, the author tells us that "If "having been doubted, whether mutual debts of a different "nature could be set off against each other under the above "clause of the act of the 2 of George 2, it was enacted by "8th George 2, that by vir ue of the said clause mutual debts "may be set off again.t each other, either by being pleaded, "&c. notwithstanding such debts are deemed in law to be "of a different natuie, &c."

Under these acts, it was decided that a set-off cannot be pleaded to an action of covenant for general damages, so neither can uncertain damages be pleaded by way of set-off to an action of covenant for rent, see same authoe, same letter and title. "And a defendant cannot set-off a claim "for bad debts made by the misconduct of the plaintiff in "selling goods as factor, such misconduct is properly to be "inquired into in a suit for that purpose."

But it will be answered, that the defendant in the cause now to be decided does not call the allowance, which he claims in this case a set-off. If it had been so called, I can scarcely imagine, that any court would have decided that it ought to be allowed. Yet that is the true name, for it cannot be called a payment which is made in what the note calls for, viz. money; nor can it be called a satisfaction, for that is made in something else than what is promised in the note to be paid, and which must be accepted by the payee in place of what is promised to be paid. The English courts would not allow a set off of damages to be recovered in an action founded on the contract. But if the defendant be entitled to recover from the plaintiff in this cause any damages for any defect in the carriage, which appears to have been the consideration of the note sued on, those damages must be recovered in an action in form ex delicto. Much less then would an English court allow a set off of such damages.

Having reviewed the English Statutes of set off and the decisions of the courts on those statutes, I will proceed to review our own statutes on that subject. Our first act was passed in 1804. That act provides that. "If two or more "dealing together be indebted to each other in bonds, bills, "bargains, promises, accounts or the like, and one of them

"commence an action in any court, if the defendant cannot "gain say the deed, bargain, or assumption upon which he is "sued, it shall be lawful for such defendant to plead pay- "ment of all or part of the debt or demand; and give any "bond, bill, receipt, account or bargain in evidence," and judgment was by that law directed to be given in favor of the party plaintiff or defendant in whose favor the balance was found. Thus stood our law of off-set till the 8th December 1818, when the law was so changed as to allow judgments to be set-off. If it may be proper to refer to the history of that law, I can say it was introduced by an experienced and accurate lawyer; from the county of St. Louis alone there were three members of the house where the bill originated, who ranked among the ablest in the territory, and one of them still remains a member of the bar, and maintains his ascendency. In that house no one member of the bar expressed a doubt of the necessity of the amendment. By this also, it was made necessary to give notice of set-off unless it were pleaded in bar. In the revised code of 1825, this law was left as it was framed by the Territorial Legislature of 1818; and in that of 1835, it reads thus: "If "any two or more persons are mutually indebted in any "manner whatsoever, and one of them commences an ac- "tion against the other, one debt may be set-off against the "other; although such debts are of a different nature. In all the changes debt, viz: demands founded on the contract alone are allowed to be set-off.

It is not asserted that our own courts have in all this time decided otherwise than in strict accordance with those of England. Indeed I am not informed that they have in any case been solicited even to decide otherwise than those of England did, until this cause was brought up. This being the case, it appears to me that it would be an assumption of legislative power in the courts, were they to decide as it is here contended they ought; that the defendant should be allowed to set-off against the note sued, any damages he may have sustained in consequence of the ill execution of the carriage given in consideration of this note. In this view I am confirmed by several considerations 1st. We have

AUGUST TERM. courts of chancery as they have in England, to whom ap-
1840.
plication may be made for relief in cases of peculiar hard-
Ferguson    ship.
v.
Huston.         2nd. Such notes are, with us, assignable, and the assignee
may, by statute, sue on them in his own name, which in
England he could not do: by this act the legislature indicates
a wish that they should, in some measure, supply the place
of money; and their value in this respect would be much les-
sened, if those notes were to be reduced in the nominal val-
ue for any injury the maker may have sustained by a fail-
ure, in part, of the consideration.

The 7th sec-    In the third and last place the legislature had the subject
tion of the 5,
article of the under their consideration, on one occasion, and allowed the
act relating  consideration of such notes, as were sued on before justices
to justices
courts (R. C. of the peace, to be impeached either in whole or in part,
1835, p. 359.)
is applicable but made no such provision for suits on notes commenced
only to suits before the circuit courts, see page 359, of the digest of 1835,
instituted
before a jus- sec. 7, of 5th article of the act to establish justices courts
tice of the   and regulate proceedings therein. The whole law of set-off is
peace.
an innovation on the common law, and as such, it ought to
be strictly construed. Neither our own Legislature nor
that of England ever permitted any thing but demands in
form ex-contracter to be off-set. And the last mentioned
act of the legislature of Missouri giving the justices courts
power to impeach the consideration of notes &c. is in my
opinion a command to the other courts to refrain from such
acts. The common law, in my opinion, is, and ought to be,
that as the maker of the note failed to return the carriage,
or to offer to return it, within a reasonable time after the
alleged defect was discovered, he cannot now make any good
defence against the payment of the full amount of the note
unless he prove that it is worth nothing at all. The in-
struction of the circuit court was, in my opinion, more fa-
vorable to him than it should have been. For the reasons
above given its judgment ought, in my opinion, to be affirm-
ed.

*Dissenting opinion of Napton Judge.*

The only material question presented to the court by this
record is, whether a vendee, who has, without objection,

accepted articles manufactured for him, is entitled, in an action brought against him on a note for the price, to show, by way of reducing the damages, the inferiority of the articles to those contracted for, though the contract has not been rescinded by an offer to return them.

It is not very difficult to account for the admitted diversity of opinion among the courts, not only of England but of this country, in relation to the proper rule on this subject.— The impracticability of laying down any general rule that will inflexibly govern the construction of contracts, which assume such an infinite variety of hues, in the ordinary transactions of life, will not be a matter of astonishment. The great stumbling block to a rational and uniform rule on this subject has however been ancient judicial precedent.— Whilst some tribunals have felt themselves constrained to adopt to some extent, the innovations, which modern practice has sanctioned, others have yielded entirely to the supposed authority of antiquated precedent, and a third class of judges have rejected the practice which they suppose to have never been sanctioned by that "perfection of reason" which is claimed to be synonimous with the common law, or the reason of which has ceased to exist. It does not become me to say, which course should be applauded or which condemned. The fact, that such variety of opinion has existed, and that this variety can be as distinctly traced to the causes alluded. to, is all I undertake to assert.

The following propositions may at least be assumed as fairly deducible from the reported cases.

1. If the fraud or breach of warranty goes to the entire consideration, it may be plead or given in evidence, in bar to an action on the contract or security, and no offer to return the property is necessary.

2. If the fraud goes to a partial failure of consideration, it vitiates the contract, and leaves it in the power of the vendee, by a return of the property in a reasonable time, or an offer to return the same, to rescind the contract and avoid the payment of any thing.

3. If there be a breach of warranty, without any fraud,

in the sale of a *specific chattel*, it seems to bo pretty well set-tled that the vendee after accepting the article is not at lib-erty to rescind the contract in toto, without a previous agreement to that effect, or the subsequent assent of the vendor.

4. If there be a breach of warranty in the sale of *manu-factured articles* by the manufacturer, the vendee may have a reasonable time to return the articles, and if in this case, there be a return or an offer to return, the payment of the price will be avoided.

5 If in this last case, there has been no return of the articles, or notice of their defects given, the question arises, wheth-er such conduct, on the part of the vendee amounts to a waiver of the breach of warranty, or whether he still has his remedy, and if so, is he forced to his cross action on the warranty.

The first four propositions are, I believe, not disputed, but a satisfactory solution of the last must determine the merits of this case.

In England, a distinction has been drawn between suits on the original contract and those founded on the security; in the latter case, the party must resort to his cross action.— Morgan v. Richardson, 1 Camp. 40. 2 Camp. 346. M. and M. 483. Chitty on Contracts 867. Where the suit is for the purchase money, it has been held, without any difference of opinion, at least during the last thirty years, that the de-fendant may, in reduction of the damages, show the breach of warranty as to the quality of the articles sold, without any return of the articles or notice of their defects King v. Borton, 7 East. 481, note, Cormack v. Gilles. 7 East. 480, Germaine v. Burton. 3 Stark. Rep. 32, Barton v. Butler.— 7 East. 480, Street v. Blay. 2 B. and A. 456, Fisher v. Sa-muda. 1 Camp. 190.

Mr. Starkie, in his treatise on Evidence, (vol. p. 645,) thus lays down the established doctrines in England, on this sub-ject, "Where the article of sale is warranted, it seems that the vendee is entitled to prove the inferioty, and the breach of the warranty, in diminution of the damages, although a specific price has been agreed for, and although he has not

rescinded the contract *in toto*, as he might have done by re-

turning the article. This is not open to the objection, that the defendant ought to have rescinded the contract *in toto*, for, from the very nature of the contract of warranty he has a right to keep the goods, and recover damages for the breach of warranty. He may either rescind the contract altogether, by returning the goods, provided he return them as soon as the breach is discovered, and whilst they remain in the same state, and within a reasonable time, and refuse to pay the price, or recover it in case it has been paid, or he may retain the goods and recover the difference between the real value and their value as warranted; and therefore it is *just, as well as convenient, that he should be permitted to prove the breach of warranty in the first instance, in diminution of damages.*

In Basten v. Butler, (7 East. 480,) the case of Cormack v. Gillies is cited. It was there held, that as the purchaser of the warranted article may return it and still maintain an action for a breach of warranty, it follows that he ought to be permitted to prove the inferiority of the article, in diminution of damages, or an action brought by the vendor to recover the stipulated price, instead of compelling him to pay the whole stipulated price in the first instance, and to leave him to his remedy to recover for the breach of warranty in another action. The same doctrine was held by the court of King's Bench in the case of Germaine v. Burton, (3 Stark. R. 32. 14 cond. E. C. and R. 152.) It was an action of assumpsit for goods sold at a specific price by sample and it was held by the court, that the defendant might prove in diminution of damages that the goods did not correspond with the sample. This decision proceeded on the ground, that a sale of goods by sample, was a sale by warranty, a doctrine that has been previously established in the case of Parker v. Palmer, (4 B. and A.

In the case of Street v. Blay (2 B. & A. 456, Tenterden C. J. reviews most of the cases on this and whilst he dissents from a portion of the doctrine own in Starkie, and grounded on the opinion of in the case of Eustis v. Harmay (3. Esp. N. P. C. dire-

ly sanctions the legality and propriety of so much of that doctrine as relates to a reduction of the damages by proof of the inferiority of the article warranted. He maintains the position, afterwards sanctioned by the Supreme Court of the United States in the case of Thornton vs. Wynn (12 Whea. 183,) and which is substantially stated in the third proposition I have above assumed, and then proceeds to observe, "If these cases are rightly decided, and we think they are, and they certainly have been always acted upon, it is clear that the purchaser cannot, by his own act alone, unless in the excepted cases above mentioned (that is, where there has been a condition in the contract authorizing a return, or the vendor has received back the chattel, and has thereby consented to rescind the contract, or has been guilty of a fraud, which destroys the contract altogether,) revest the property in the seller and recover the price when paid, on the ground of a total failure of consideration, and it seems to follow that he cannot, by the same means, protect himself from the payment of the price on the same ground. *On the other hand, the cases have established, that the breach of the warranty may be given in evidence in mitigation of damages, on the principle, it should seem, of avoiding circuity of action;* and there is no hardship in such a defence being allowed, as the plaintiff ought to be prepared to prove a compliance with his warranty, which is part of the consideration for the specific price agreed by the defendant to be paid."

Such is the doctrine in England in relation to breaches of warranty, where no fraud is alleged, and in order to apply the principle to the case now before the court, it may be necessary to show that the law implies a warranty, in the case of articles manufactured for specific purposes. Since Sir William Blackstone declared that the English common law recognised no implied warranty in a sale of personal chattels, except a warranty of title, the courts of the highest authority in that country, have recognised a very different rule, as existing at common law, or have very much modified the old one laid down by that learned commentator, if such an one really existed. The principle of *caveat emptor* has not, at least for the last half century, been understood in that ex-

tensive sense which Judge Blackstone gave it, an exception to the rule has been already adverted to, as recognised in the case of sales of goods by sample, Germaine v. Benton, (3 Stark. R. 32; Parker v. Palmer; 4 B. & A. 387.) Another exception frequently recognised and well established is the case of *manufactured articles.* In a sale of such articles by the manufacturer, there is an implied warranty that they shall answer the purposes for which they are ordered. Chitty in his treatise on contracts, so declares the law; and Lord Tenderden in his opinion in Street v. Blay, recognises the existence of this distinction. "It is to be observed," says Lord Tenderden, "that although the vendee of a specific chattel, delivered with warranty, may not have a right to return it, the same reason does not apply to cases of executory contracts, where an article, for instance, is ordered from a manufacturer, who contracts that it shall be of a certain quality; or fit for a certain purpose, and the article sent as such, is never completely accepted by the party ordering it. In this, and similar cases, the latter may return it as soon as he discovers the defect; provided he has done nothing more in the meantime than was necessary to give it a fair trial, (O'Kell v. Smith, 1 Stark. N. P. C. 107;) nor would the purchaser of a commodity, to be afterwards delivered according to sample, be bound to receive the bulk, which may not agree with it."

It will be perceived that the Judge is speaking of the right to rescind a contract altogether, and thereby avoid the payment of any thing, and he is aiming to show the distinction between sales of specific chattels and contracts for manufactured articles, and whilst he clearly admits the existence of an implied warranty in this last class of cases, he, in another part of the same opinion which I have quoted above, allows the breach of this implied warranty to go to a reduction of the damages.

In this country, the decisions have been various and conflicting. In North Carolina, a partial failure of consideration cannot be given in evidence, but relief is said to be attainable by a distinct suit. Washburn v. Pilot, 2, Dev. R. 390. It does not appear, whether this doctrine is held applicable,

when the consideration is affected by a breach of warranty as well as fraud, or whether it extends to actions brought on the original contract as well as those founded on the security. In Indiana and Virginia, Statutes have been enacted, authorising such defences, 2, Kent. Com. 474. In Ohio, the doctrine is the same as in North Carolina, but not having access to the Reports of that State, and merely taking the statement of chancellor Kent, I am not apprised of the grounds upon which these defences have been held inadmissible. In Kentucky, the courts have refused to allow a partial failure of consideration to be given in evidence, but compel the defendant to resort to his cross action. The courts of New-York have however adopted the rule, which we have seen, prevailed of late years in England, and have extended it to cases of fraud as well as breach of warranty. They have allowed this defence to be set up, whether the vendee has been sued for the consideration of a sale, or upon the security given for the purchase money, 4, Wendell 483, 8, ib, 109, 2, Kent, Com. 473, and cases cited. So in Pennsylvania it is held, that the defendant may, by way of defence show a breach of warranty as to the quality of articles sold, without either returning them or giving notice to the vendor to take them away. Steigleman v Jeffries, 1, Serg. and Rawle 477. In Massachusetts, it was held, that where the defendant, without objection, accepted articles manufactured for him, he is not entitled, in an action brought against him for the price of the articles, to show in evidence that the workmanship was bad; but his remedy was by a special action on the case for the fraud and deceit in the workmanship, Everett v Gray and others 1, Mass. R. 101. In the subsequent case of Tapt v. The Inhabitants of Montage (14 Mass. R. 185.) ch. J. Parker observed in relation to the case of Everett v Gray and others "the law of that case has since been questioned; and we are certainly not disposed to extend it to cases not exactly similar. The ground of the decision was, that the gunlocks were accepted without objection, at the time. But if the grounds of the decision of the court in Everett v Gray were, as Judge Parker, supposes, the acceptance of the articles without objection, why

did the court go further and assert that the defendant had his remedy by a special action on the case? The decision obviously assumed that the defendant had his remedy, and that remedy was by a cross action. But I humbly conceive, that this decision is of but slight authority, because it does not appear from the report, whether the defendant had ever after offered to return the gunlocks or not. If he had, the decision conflicts with the entire current of both British and American authorities, if not, the circumstance of there being no objection to the articles at the time they were delivered, had nothing to do with the merits of the defence. The report of the case is a very meagre one, and it is entitled to no great weight.

From this cursory view of the authorities, it will be perceived, that the uniform current of judicial opinion in England, at least since the accession of Lord Mansfield to the bench, has been in favor of the admission of proof of a breach of warranty in diminution of damages, where the contract has not been rescinded. In this country, the courts of the different states, as we have seen, have come to very contradictory conclusions. A large majority of them, if not all, have admitted the existence of a remedy in such cases, but require the party to resort to his cross action.— This idea was doubtless taken up from the ancient British authorities, and whilst in England since the commencement of the present century, it has been exploded as useless, expensive and inconsistent with the genuine spirit of the common law, our judicial tribunals'have not kept pace with their neighbors across the water, but have adhered to a practice, which appears to be at least without any foundation in reason.

Let us examine for a moment the two points, from which, I apprehend, most of the difficulty and confusion on this subject has arisen.

First. The courts of England recognized a distinction between suits founded on the original contract and those based upon the security. Of the cases cited by Chitty in his treatise on contracts, confirmatory of this distinction, I have not been able to procure but one. The case of Morgan v. Rich-

ardson cited in 1 Camp. 40, was a case, in which a bill of exchange had been given for the amount of the work, and money had been paid into court on the count upon the bill. In that case the defence, was held inadmissible. It will be found, I have no doubt, that in all the other cases of this character, the security alluded to is *negotiable* or a *sealed* instrument. The principle of those cases has therefore no application to the case now before the court. The note here sued on is not negotiable, within the provisions of our statute, but is expressly declared subject to all the equitable defences which would avail against the maker. The holder of the note, under our statute, stands in the shoes of the maker; he is fully apprised, that he has purchased all the rights of the payee and no more, and such defences can be no surprise upon him. The promissory note gives the contract no new qualities, except so far as the statute of frauds is concerned, and I cannot see any good reason, why any additional rights should be claimed.

Secondly. This circuity of action, which, the courts of several of our states seem anxious to patronize, has been the next and chief obstacle in the way of an equitable settlement of this question. As early as the case of Cormack v. Gillies, (7 East. 480,) this doctrine was repudiated in England, and the court of common pleas in the case of Street v. Blay, (2 B. and A. 456,) recognized the validity of this determination. Some of the most respectable judicial tribunals in this country have adopted the same views. This has been the case in New York and Pennsylvania, and, in Massachusetts, as we have seen, the later decisions lean that way. The remarks of Judge Marcy in the case of McAllister v. Reab, 4 Wendell 192, are appropriate and just.—— "From an examination of the cases," says that judge, in delivering the opinion of the court, "I am satisfied, that in those where the damages arising from a breach of warranty in the sale of chattels, have been allowed to be given in evidence by the defendant, to reduce the amount of recovery below the stipulated price, the decisions of the court, have not proceeded on the ground that the express contracts were void by reason of fraud, and that the recovery was had up-

on a quantum meruit or valebant upon implied contracts,

but upon a principle somewhat different from either of those
adverted to in this case by the court below; upon a princi-
ple which has of late years been gaining favour with courts
and extending the range of its operations. Such defence is
admitted to avoid *circuity of action.* A second litigation on
the same matter should not be tolerated, where a fair oppor-
tunity can be afforded by the first to do final and complete
justice to the parties." Hence, the same court has held, not
only that the defence is admissible, but that if the vendee
chooses not to make such defence, when sued upon the con-
tract, he cannot afterwards sue for the fraud or breach of
warranty. So also Lord Ellenborough held, in the case of
Fisher v. Samuda, (1 Camp. 190,) that after the purchaser
had suffered the vendor to recover the price without making
any defence, he could not maintain a cross action against
him founded on the non performance of the contract.

But it is thought that our Statute authorising defences
of this sort to be made before justices of the peace, has some
bearing upon the subject. The 7th, sec. of the 1st, art. of
the act concerning justices courts contains the provision al-
luded to; that section provides that "on the trial of all suits
upon contracts before any justice of the peace, or in any
circuit court by appeal or otherwise, whether brought by
the original claimant, or any persons for his use, or by the
payee or obligee of any bond or note, or his assignee, it
shall be the duty of said justice or court, to hear and deter-
mine such cause on its merits, and to hear parol or other le-
gal evidence, to impeach the consideration or validity of any
bond or note; and if it shall be ascertained by any justice
or court or verdict of the jury, that the consideration of
such bond or note has failed in whole or part, judgment shall
be given according to the finding of the justice or court, or
the verdict of the jury, notwithstanding the defendant may
hold a warranty or other instrument of writing on the
payee or obligee of such note or bond, purporting to be an
agreement to make good the consideration of said bond or
note, if the same should fail." It is thought that the Legis-
lature by making this provision applicable only to suits be-
C 2

Ferguson.
v.
· Huston.

fore justices, tacitly excluded the inference that it would be applicable to superior courts. ·

I entirely concur in this construction, and never supposed that this was the law or ought to be the law in actions in the superior courts. Whilst I do not profess to be able to explain the full bearing of this enactment, unless I was at liberty to refer to its history with a view to ascertain the particular evil which it was designed to remedy, it is at least sufficiently obvious that it has no bearing upon the principle, which I am disposed to maintain. It not only embraces actions upon contracts, but upon bonds, it is not limited to contracts for personal property, but may embrace contracts in relation to land; it not only applies to sales of specific chattels, but to sales of manufactured articles; and all this where the opposite party holds a written instrument of warranty, certainly I never supposed that this was the law, until the Legislature so declared it, and I should be very far from extending its operation to cases in the circuit court, for which it never was designed.

It is also suggested, that this defence might fall within the jurisdiction of a court of chancery. I do not understand, that a court of chancery has any jurisdiction, in a case, where the remedy is complete at law. Whether defences of this kind be admissible or not, under the general issue in assumpsit or debt, it seems to be conceded even by those judges, who refuse to allow the matter to be set up by way of defence, that the party's remedy is by cross action on the warranty or for the deceit. There is nothing, therefore, in either event to require the interposition of the Chancellor.

It has been lastly urged at the bar, that if this defence be admissible, there should be at least some notice given to the opposite party. This doctrine is reasonable enough in itself, and I see it has prevailed in New York, though I have seen no mention of it in any English case. If the pleadings in assumpsit and debt were now for the first time to be settled by adjudication, the objection to such defences without notice would have great weight. But since the thousand defences have been allowed in these actions, which have not

the remotest affinity to any idea conveyed by the general issues of non assumpsit and nil debet, and these defences have prevailed for centuries, without objection, it is too late now to require an exception to be made against the admission of the defence proposed in this case.

I conclude then, that the real question should be, whether the defendant has any remedy, after accepting the warranted articles, or whether he has by retaining the property, waived the defects. If he has any remedy at all, and the retention of the articles be no waiver of the fraud or breach of warranty, that remedy should be available in the suit brought by the fraudulent warrantor. There is no necessity of having two actions to settle what can be as well settled in one. That the party, by retaining the warranted property, does not waive any rights, seems to be admitted by all the cases which I have seen.

The defendant, Ferguson, in this case, having contracted for a carriage that would answer for a mail coach, after receiving the same, had a reasonable time to ascertain whether that carriage was made in accordance with the contract or not. If the defendant ascertained that the carriage was unfit for the purpose designed, he had a right to return the same to the vendors, and upon such return, or an offer to return, the contract would be rescinded, and these facts would have constituted a complete bar to their recovery upon the note. Having however, retained the carriage and thereby affirmed the contract; he had still a right to give the fraudulent making of the carriage or breach of warranty, in evidence to diminish the damages.