STATE OF MISSOURI ex rel. PUBLIC SCHOOL FUND OF NEW MADRID COUNTY et al. v. LUCE et al.

(Circuit Court, E. D. Missouri, E. D. February 24, 1894.)

1. SCHOOL DISTRICTS—OFFICERS—AUTHORITY TO SUE—RATIFICATION.

Under Rev. St. Mo. §§ 8040–8042, making it the duty of the state board of education, when it shall be ascertained that the objects of the grant of school lands have been violated, to institute suits in the name of the state to prevent such violations, and authorizing the board to employ an attorney to prosecute such suits, an attorney appointed by the board cannot maintain a suit for such purpose without the direction of the board, based on its ascertaining the existence of the facts authorizing the institution of suit; and failure of the board to disaffirm the bringing of a suit by the attorney does not amount to a ratification.

2. SAME.

 In such a suit, brought in the name of the state without authority of the board, in which the county also joins as complainant, after a compromise between the county and the defendants, founded on a valuable consideration, and a dismissal thereupon of the suit on the part of the county, no subsequent ratification by the board could operate against the defendants to sustain the suit.

This was a suit in the names of the state of Missouri, on the relation of the public school fund of New Madrid county, and of that county, against Elmira C. Luce and others, to cancel certain contracts between the county and defendants relating to school lands, and to set aside certain conveyances of such lands. The suit was brought in a court of the state, and removed to the United States circuit court. Subsequently the county and defendants entered into a compromise, and the suit was dismissed on the part of the county. Thereupon defendants moved to dismiss.

Phillips & Walker and J. E. McKeighan, for complainants.
Clarence Brown, R. B. Oliver, and Geo. D. Reynolds, for defendants.

PHILIPS, District Judge. There can be no question of the right of New Madrid county to have this suit discontinued, in so far as it is concerned. The action in its name was instituted upon its order, and it had the right to withdraw from the litigation at will, especially so, the defendants consenting. This must be conceded, for, as the action stands, the county is exposed to the liability for costs and counsel fees.

The only debatable question is as to the authority of Henry N. Phillips and his associates to prosecute this action in the name of the state, to the use of the public school fund of the said county. With the county out of the case, to give the complainants a legal footing in court, it must be held that the remaining complainant can alone proceed with this action. The original bill was manifestly not framed on this theory. The institution of suit, following closely after the order of the county court, together with the framework of the bill, quite clearly indicate that the pleader regarded it rather as an action to the use and benefit of the county. The extrinsic evidence, as well as the face of the original bill, shows that the introduction of the "state ex rel." into the caption was after completion of the draft of the bill; and the bill contains no averment of the authorization thereto by the state board of education. The bill or suit sought to have certain contracts between the county and defendants declared invalid, for want of consideration and authority on the part of the county to make such contracts. Certainly such action would require the presence therein of the parties to the contract sought to be vacated. The bill furthermore proceeded upon the theory that the title in fee to the lands in question was of right in the county, and it sought to have certain conveyances thereof, made by the county, annulled and set aside as casting a cloud on the county's title. And, as further proof that the action was framed upon the theory

that the county was the real party in interest, the petition contains a count in ejectment beginning thus: "Plaintiff [not plaintiffs] states that on the 3d day of May, 1887, it was lawfully entitled to the possession of the land." In this form the case was removed from the state court to this court. As the double action could not be proceeded with in this jurisdiction, the complainants filed here what is termed "a reformed bill," omitting the count in ejectment, and recasting the form of the averments, giving more color to a proceeding in the name of the state, and distinctly averring that the action was authorized by the state board of education, as provided in sections 8040 to 8042 of the Revised Statutes of the state of Missouri.

I decline to express any opinion as to whether the state board of education can proceed in this case to complete the objects of this suit without the presence of the county, or whether it is legally permissible to so reform the bill, after removal from the state court, as is attempted in this cause. It is competent for the defendants to challenge the authority of the attorneys to prosecute this case in the name of the party or parties thereto, and, if such attorneys have instituted this suit on behalf of the state without authority therefor from the imputed client, the court will dismiss the case. Keith v. Wilson, 6 Mo. 435; Weeks, Attys. at Law, §§ 200–214; Turner v. Caruthers, 17 Cal. 433; McKiernan v. Patrick, 4 How. (Miss.) 333.

Section 8039, Rev. St. Mo., vests the supervision of instruction in the public schools in a board of education, composed of certain state officers, with power of general supervision over the entire educational interests of the state; "to direct the investment of all moneys received by the state to be applied to the capital of any fund for educational purposes; to see that all funds are applied to such branch of the educational interest of the state as by grant, gift, devise or law, they were originally intended." Then follow sections 8040 and 8041. While having for their general object the same purpose—the protection and conservation of the property interests of the public schools—they yet pertain to separate matters. Section 8040 has special reference to the lands set apart for school purposes, and makes it the duty of the board of education to look after the violations of the objects of the grant of swamp and other school lands, the perversion of any funds arising therefrom, and the misuse of such lands and money contrary to the objects of the grant. And it makes it the duty of the board of education to institute suits in the name of the state, in behalf of the public schools of the county in which such lands lie, to prevent such violations, perversions, and misuse. Section 8041 pertains solely to the duty of the board—

"To ascertain from all the counties of the state what disposition has been made of the state school fund drawn by the counties from the state yearly, how much thereof has been transferred to the school townships; and when any such fund, or any part thereof, has been diverted from its lawful use, it shall be their duty in like manner as in the last section provided, to institute suit for and collect the same, and return it to its legitimate channel."

Then follows section 8042, which is the only section of the statute providing for the employment of an attorney by the board of education, as follows:

"The state board of education shall have power to employ a competent attorney in each congressional district, to prosecute the suits mentioned in the preceding section, and who, for such services, shall be allowed the following per cent. as fees."

This section, after providing for certain per cents on all moneys recovered by such attorney, provides that:

"Where lands are recovered by sui·ɔ instituted by such attorneys, they shall be allowed such sums for their services as may be deemed reasonable by the county court of the county in which the lands recovered are situated, to be paid out of the county treasury; but if said county court shall neglect or refuse to allow reasonable compensation for the services of said attorneys in prosecuting suits for the recovery of lands as above set forth, then such attorneys may bring suit in the circuit court of the proper county, against the county the court of which so refuses or neglects to allow compensation, and the amount thus recovered shall stand as a judgment against the county in which said lands are located upon which suit was brought."

Section 8040 only authorized the institution of such suits "when in any case it shall be ascertained that the objects of the grant have been violated," etc., meaning, of course, when so ascertained by the board of education. This becomes still more apparent from the following clause in said section 8042:

"And it shall be the further duty of said attorneys to examine the record and papers relating to school lands and funds in the counties of the district for which they are appointed, and report the condition of the same to the state board of education."

This is one of the means by which the state board is to ascertain the existence of the jurisdictional facts which authorize them to direct the institution of suits. The legislature intrusted this matter to the wise discretion of the board of education, composed of the governor, secretary of state, attorney general, and superintendent of education. They could not delegate this trust to any one else. City of St. Louis v. Clemens, 43 Mo. 395; City of Kansas v. Flanagan, 69 Mo. 22. They could not, without first ascertaining to their satisfaction the existence of the facts which would authorize the institution of suits, empower the attorney, ad libitum, to embark the state in such litigation, with its liability for costs, and imposing upon the counties the liability for fees.

The attorney, H. N. Phillips, presented at the hearing of this motion a resolution of the board of education, adopted in 1885, appointing him such attorney, and unqualifiedly authorizing him to institute suits at his discretion. That such authorization was without warrant of law is beyond question. But no action was taken in this case by said attorney under said attempted authority. The board at a later date, in 1889, adopted another resolution, authorizing said attorney to investigate matters within the purview of the statute within said district, and which said resolution conformed to the provisions of sections 8040 and 8042, requiring him to report to the board his discoveries respecting such lands

and funds. And, as evidence of the construction placed by said attorney upon his power of attorney, the minutes kept by said board show that he afterwards made reports thereto touching lands in other counties, and that he had made claim for compensation for his per diems therefor.

Thus matters stood until the 2d day of December, 1893, when the defendants interposed the motion in this case to dismiss this action upon the grounds that the county court had compromised and adjusted this controversy with the defendants, and ordered the dismissal of this suit on its part (which the evidence shows it had so ordered), and for the further reason that the suit was prosecuted by the said Phillips and his associates, in the name of the state, without the authorization of the board or the state. And on the 18th day of December, 1893, the attorney general of the state interposed by motion, as attorney general of the state, and ex officio member of the state board of education, and as amicus curiae, asking to strike out the name of the board of education to said action, for the reason that the board had not authorized the same. Pending this motion, said Phillips made application to the said board of education for direct authority to proceed in its name in this behalf, the result of which was that he obtained from the board a resolution simply requesting the attorney general to withdraw so much of his said motion as asked to strike the said board of education from said bill. In and of itself, looking to the language of the resolution, this amounts to nothing. If the board in fact desired to ratify the unauthorized action of the attorney, and to authorize the prosecution of this suit, why did it not say so directly in plain terms, when that was the very authority the attorney was seeking? There can be but one reasonable conclusion from this equivocal action of the board, and that is, it was unwilling to affirmatively assume the responsibility of the suit, but was willing simply to remain passive. This does not meet the requirements of the statute which empowers the board to authorize suits to be brought. It can do so only after it has ascertained the facts enumerated in section 8040, which ascertainment is a condition precedent to its right to take affirmative action, and it should be made, in this controversy, to affirmatively appear, by his claiming authority from the board, that the board had to its satisfaction ascertained the facts to exist alleged in this bill, or that it had at least directed suit to be brought, from which an inference might arise that it had made the precedent ascertainment.

In this view of the clear intent and spirit of the statute, I cannot accede to the suggestion of one of the learned counsel for complainants that the mere failure of the board to affirmatively disaffirm the action of the attorney amounts in law to a ratification. This board is a creature of the statute. As such it possesses only such powers as the statute expressly confers upon it, or such as are implied, to enable it to carry out its declared functions. Being the mere instrumentality of the state to carry out and effectuate the public policy of the state, it is not competent for it to create estoppels and ratifications, like an individual sui juris, merely by

its nonaction as "a looker on in Vienna." The language of Judge Denio, in Peterson v. Mayor, etc., 17 N. Y. 449, may be aptly applied in this connection:

"Where a statute * * * has prescribed certain formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects."

Even if it were capable of creating a ratification by such methods, another serious question would arise as to its right to do so against the defendants to this suit. The record evidence in this case shows that, after the removal of this case from the circuit court of New Madrid county to this jurisdiction, the said county and the defendants entered into a compromise, founded upon a valuable consideration, so far as the parties thereto are concerned, by which this suit was ordered to be dismissed on the part of the county, and that, acting upon the faith thereof, the defendants paid the said county large sums of money for state and county taxes, claimed by the county to be due from the defendants, on the lands in controversy, and entered into, upon the faith thereof, other important contracts with the county. As matters then stood, there was in fact no authority from the state board of education for the institution and prosecution of this suit, and the defendants were then entitled to have this action dismissed, because authorized to do so by the county, and for the want of any authority from the board of education to the attorney to institute or prosecute the suit. No subsequent ratification by the board of education could impart a retroactive operation to its resolution, to the prejudice of the action taken by the defendants, on the existing status of the case. A ratification partakes of the nature of an estoppel, and, like the doctrine of relation, a fiction of the law, it is never permitted to operate to the injury and prejudice of parties whose rights attached before the act of ratification or estoppel. The right of the state board of education cannot be materially affected by the dismissal of this action. If it wishes to litigate the subject-matter of this bill of complaint, let it take the proper action looking thereto, and say so directly.

The motion to dismiss this suit is sustained.