### DAVE SELF v. THE STATE.

#### No. 1521. Decided June 15, 1898.

**1. Murder—Evidence—Animus of Defendant.**

On a trial for murder, where the evidence showed a previous difficulty between the parties as to the settlement of a debt, it was competent, as showing the animus of defendant, to prove that on the night before the shooting he had asked a third party if deceased did not have the reputation of getting after people with a knife, and upon witness' relating an incident of that kind he stated, "If he ever comes at me with a knife, I will cut off his wind." The testimony was also admissible in rebuttal of defendant's testimony, that he went to deceased's house with no hostile intention.

**2. Same—Postponement—Sickness of Leading Counsel.**

On a trial for murder, where the issues were plain and simple, it was not error for the court to refuse a postponement because of the sickness of a member of the firm employed as counsel to defend the case; and because defendant, who was present, was also sick and not in condition to afford his counsel the benefit of his advise in the conduct of the case,—there being nothing complicated about the case.

**3. Jury Law—Juror Who Was on Grand Jury that Found Indictment— Diligence.**

A juror who sat upon the grand jury which found the indictment in the case is not ipso facto disqualified, though that fact would constitute a good ground for his challenge. Code Crim. Proc., art. 673, subdiv. 7. Upon the examination of a juror upon his voir dire as to his qualifications, diligence upon the part of defendant requires that he should make the statutory inquiries as to grounds for challenge; and having failed to do so, he can not afterwards be heard to complain. He is not warranted in assuming that because the juror had stated he knew nothing of the evidence and had no bias or opinion, that therefore the juror could not have been upon the grand jury.

APPEAL from the District Court of Fort Bend. Tried below before Hon. T. S. REESE.

Appeal from a conviction for murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

Appellant was indicted for the murder of Reuben Ewing by shooting him with a pistol, on the 24th day of December, 1896.

The testimony shows substantially that Self, the appellant, was a car-

penter and builder, and that he had made a contract with Ewing, the deceased, to make some repairs on Ewing's dwelling-house, which was about a mile below the town of Richmond. The contract stipulated that the price Ewing was to pay for the repairs was $75. During the progress of the work there were some changes in the plans. At the time the contract was completed, Ewing claimed to have paid all of the $75, except $4, which the contract called for. Self claimed that, by reason of the changes in the plan, the amount which Ewing owed him was $33 for extra work. On the evening of the 24th of December Self went out to Ewing's house, and they met out at Ewing's barn, some little distance from the house, where Ewing was feeding his horses. There was no one present, but Ewing's wife testified that she overheard the conversation from the house. That they got into a dispute as to the amount Ewing was owing, and Self commenced cursing. Ewing turned and started towards the house. Self drew his pistol and commenced firing upon him. At the third shot Ewing was shot in the leg, severing an artery, and he fell and in a short time bled to death from the effect of the wound. Self, who testified on his trial, stated, that as Ewing turned to go to the house he said he was going to get his gun to shoot him (Self), and that, being afraid that Ewing would reach the house, get his gun, and shoot him (Self), before he could get out of reach, he drew his pistol and fired upon him three times as he ran. After which he went to town and surrendered to the sheriff. The State proved that on the night before the killing defendant had asked one Miles about the character of the deceased as a man calculated to use a knife in a difficulty. Miles told him he was a good sort of a negro, but he had heard that a few years since deceased was indicted for running another negro through a wire fence with a dirk. That defendant then said, that if he came at him with a knife he would "cut off his wind."

*Kirkland & Russell,* for appellant.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifty years; hence this appeal.

Appellant excepted to the action of the court in permitting the State to prove by the witness Miles that, on the night before the shooting, appellant came to him in the town of Richmond, "and asked witness if deceased did not have a reputation of getting after people with a knife; and witness replied that the only thing he had ever heard against deceased was that he had run one George Phillips with a dirk, and defendant said to witness, 'If he ever comes at me with a knife I will cut off his wind.' Appellant excepted to said testimony because it was not material, was not in rebuttal, and was not a threat, being qualified by a con-

dition that defendant would act in necessary self-defense if deceased should run after him with a knife." The objection was overruled and the witness allowed to testify, and appellant reserved his bill of exceptions. The court explains this bill with the following statement: "That said testimony was adduced in rebuttal; that defendant testified in his own behalf that he went to deceased's house with no hostile intention, and that he had not the slightest anticipation of having any trouble with deceased, and that the testimony of the witness Miles was admitted in rebuttal of this testimony of the defendant." The circumstances of the killing tend to show that the difficulty occurred in regard to the settlement of a debt claimed by appellant against deceased for repairing his house. Deceased claimed that he only owed him $4, and appellant claimed that he owed him $37; the $33 being for extras in addition to the stipulations of the contract. There were but two eyewitnesses to the difficulty,—the wife of the deceased and appellant. The wife of the deceased, by her testimony, made out a case of at least murder in the second degree; appellant's testimony tending to show self-defense. Now, with reference to the testimony above stated, and to the introduction of which a bill of exceptions was taken, it occurs to us that same was admissible as a circumstance tending to show animus towards deceased on the part of the appellant, and in addition, the same was admissible for the reasons assigned by the court.

There is nothing in appellant's proposition contained in his motion for a postponement of the trial. He had engaged the services of the firm of Russell & Kirkland. Russell, who had supervision of the case, and with whom appellant had consulted, it appears, was sick, and not able to attend the trial; and appellant insisted that the case be postponed on that account. He also insisted that the case should be postponed because of the sickness of the appellant; that, though able to be present, he was not in condition to afford his counsel the benefit of his advice in the conduct of the case. There is nothing complicated about this case. The issues are plain and simple, and it does not occur to us that the fact that Russell was unable to attend the trial is sufficient cause for postponement. Though Kirkland, the leading counsel in the case, may not have previously consulted with his client, yet it does not appear that it was necessary to delay the case even in order for him to fully understand it. If he had craved a short postponement to enable him to consult with his counsel, no doubt the court would have permitted this. The fact that appellant was sick does not seem to have interfered with the trial, and the affidavit shows that before he was sent for he was able to be up at his place.

The only material question in this case is presented in the motion for a new trial, and it is claimed that this case should be reversed, "because one of the jurors who sat upon the jury and tried the defendant, to wit, W. M. Darst, was a member of the grand jury that found the bill of indictment upon which this defendant was tried; that the indictment was found at the March term, 1897, and said juror was a member of the said

grand jury, and passed upon the guilt of the defendant, and was therefore not an impartial juror, and neither the defendant nor his counsel knew at the time of accepting said Darst on the jury that he had been a member of the grand jury that found the bill of indictment; that said juror, when questioned upon his voir dire, stated that he had not formed or expressed an opinion that would influence him in finding a verdict in the case, and that he did not know what the evidence would be, and that he had no bias for or against the defendant; that the answer of said juror on his voir dire led defendant and his counsel to believe that he was not a member of said grand jury; that, by reason of said Darst having been a member of said grand jury, the defendant was in effect being tried by a jury that had already passed in judgment against him." This matter was presented to the court on affidavits. Darst made an affidavit for the defendant, in which he stated that, when he was examined on his voir dire, he was asked whether he had formed and expressed an opinion as to the guilt or innocence of the defendant that would influence him in finding a verdict, and that he answered that he had not, and did not know what the evidence was; that he had forgotten that he had served upon the grand jury that had found the bill of indictment; that when the indictment was read to the jury he remembered that he had served upon the grand jury, and then approached the presiding judge, and informed him of the fact, and he replied that it made no difference; that he did not make known this fact to the defendant or his attorney. Kirkland, the attorney who tried the case, also made an affidavit, that, when the district attorney examined the juror Darst upon his voir dire, the said juror answered that he had not formed or expressed any opinion as to the guilt or innocence of the defendant, and that he did not know what the evidence was; that the district attorney usually asked jurors, on their voir dire, whether they sat on the grand jury that found the bill of indictment, and affiant was under the impression that the question had been asked the juror Darst; that he did not know that said juror was a member of the grand jury that found the bill, and he concluded, from the answer of the juror, that he was not biased, and knew nothing of the facts of the case, which could not have been true when the juror had already passed on the guilt of the defendant. The State introduced the controverting affidavit of Darst, in which he stated: "That he was a member of the grand jury at the March term, 1897, which found the bill of indictment against the defendant, but he had no recollection of the testimony before said body respecting the return of an indictment against said defendant, if such was heard; affiant was on defendant's appearance bond, and brought defendant into court on Monday, the 28th of March, 1898; and affiant's feelings towards the defendant were and are kindly. When this case was called for trial on the 28th of March, affiant, whose name was on the venire of jurors in the case, stated to the court, in open court, that he was on the grand jury at the March term, 1897; that he was on defendant's bond, and did not want to serve on the jury, and asked to be excused; and, notwithstanding this, he was ac-

cepted as a juror by both the State and defendant, and served as such, much against affiant's own wishes." The State also introduced the affidavit of C. C. Everett, who stated: "That he was present at the impanelment of the jury which tried the case; that the juror Darst was one of the defendant's bondsmen; and at the request of the court brought the defendant into court on the morning of the trial. The fact that said Darst was on the defendant's bond, and the said Darst felt kindly towards the defendant, was well known to the defendant and his counsel. Said Darst's name was on the venire of jurors in this case, a copy of which was in defendant's possession before and at the time. The customary questions asked jurors in a murder case—that is, as to scruples about capital punishment, bias or prejudice, and formation of an opinion as to the case—were propounded to Mr. Darst in open court and in defendant's presence. In answer to the last question Mr. Darst said, in substance, that he knew Dave Self, the defendant; was on his bond; had heard the killing discussed and talked about considerably, but could, he thought, render a verdict according to the law and evidence; but that he did not want to sit as juror because he was on defendant's bond, and also because whatever conclusions he might come to might be misconstrued, and was insistent that he be excused. The defendant's counsel asked Mr. Darst several questions on how far what he had heard might lead to a fixed opinion in Mr. Darst's mind, and was given every opportunity to test the qualifications of the juror, and had not exhausted his challenges. The State's counsel accepted the juror, and he was turned over to defendant for acceptance or rejection; and the defendant, after consulting with Mr. Kirkland, his counsel, for some considerable time, deliberately accepted Mr. Darst as a juror."

The law makes the fact that the juror served on the grand jury which found the indictment a cause for challenge. See Code Crim. Proc., art. 673, subdiv. 7. It will be noted that a juror who may have sat upon the grand jury is not disqualified as a juror; but, as provided by statute, it is a mere cause for challenge, of which a defendant may or may not avail himself. Appellant, however, insists that he was unacquainted with this cause of challenge from no fault of his own; that he used due diligence to discover the fact when the juror was impaneled by asking him if he had formed an opinion in the case, and, on the juror replying that he had not, according to the testimony of the juror himself and according to the testimony of Everett that the opinion he had was not a fixed opinion, he did not prosecute the inquiry any further, because, from the answer of the juror, he was authorized to assume that he did not sit upon the grand jury. So that the question presented to us is one of diligence in discovering the cause of challenge, and, if he failed in the exercise of this diligence, then he can not be heard to complain. See Aud v. State, 36 Texas Crim. Rep., 76. We understand the claim to be that, while the statute makes the sitting on a grand jury a distinct cause of challenge, yet this is based on the apprehension that a person having sat upon the grand jury which found the bill of indictment must necessarily have

formed an opinion in the case adverse to appellant, and that therefore he is subject to challenge. This may be true; but does it obviate the necessity that appellant, when the jury is impaneled, shall ask all the statutory questions which bear upon the matter of disqualification? A juror might very truthfully answer that, notwithstanding he may have served upon the grand jury that returned the bill of indictment, he had no present recollection of having formed an opinion in the case; whereas, if his attention had been called directly to the fact as to whether or not he sat upon the grand jury that found the bill of indictment, he might recall the fact. The law makes the having sat on the grand jury that found the bill of indictment, and the formation of an opinion in the case, two distinct grounds of challenge; and we hold that the interrogation of a juror as to one of these grounds might not suggest to him the other. Evidently, in this case, the questioning of the juror under the thirteenth subdivision of article 673, as to whether or not he had formed an opinion in the case, did not recall to him the fact that he had sat upon the grand jury which found the bill of indictment. And we further hold that it was not diligence on the part of appellant to rest simply upon questioning the witness as to the formation of an opinion; but he should have covered the other grounds named in the statute, if he desired to avail himself of them, before he could be held to have used due diligence as to the particular cause for challenge. It furthermore appears from the record that appellant was on very friendly terms with the juror Darst,—said juror having gone on his bond,—and, if we look to the affidavit of Everett, this witness states that the juror informed counsel that he had an opinion in the case. It is not shown that counsel was even diligent in pressing his inquiries on this line. If he had been, possibly he might have developed the fact that the juror Darst had sat upon the grand jury which presented the bill. At any rate, it appears to us that counsel, knowing that the juror was friendly disposed towards him, from some cause failed in diligently pressing the statutory inquiries as to grounds for challenge, and, having so failed, he can not now be heard to complain. See Trueblood v. State, 1 Texas Crim. App., 650; Franklin v. State, 2 Texas Crim. App., 8; Lester v. State, Id., 432; 6 Crim. Law Mag., 305, and authorities there cited.

The evidence amply supports the verdict, and the judgment is affirmed.

*Affirmed.*