## G. A. FREEMAN v. THE STATE.

### No. 2795.    Decided June 22, 1904.

**1.—Practice—State's Duty to Place Eyewitness on Stand When.**

Where the proof was positive that appellant killed deceased, and the State introduced his own evidence adduced on a former trial and relied on the circumstances as narrated by him, it was not required on behalf of the State to place the son of defendant on the witness stand because he was an eyewitness to the homicide and not friendly to his father.

**2.—Evidence—Son's Animus Towards Father Immaterial.**

The court did not err in not permitting defendant to show that his son had procured his arrest, to prove the son's ill will against his father; the son not being a State's witness, and there being no testimony that he had influenced other witnesses to testify untruthfully against defendant, or any statement in defendant's bill of exception to that effect.

**3.—Same—Statement by Nonparticipant Not Res Gestae.**

A statement by the son of the defendant shortly after the homicide that Gertie, his sister, was safe, but he, defendant, had killed old Tom Sallee, the deceased, was not admissible as res gestae, it being made by one not a participant in the homicide, and a statement in narrative form showing in itself a past transaction.

**4.—Same—Declaration of Outsider Inadmissible.**

The statement of defendant's son that he ought to take his gun and kill old Tom Sallee, the party alleged to have been killed, shortly before the homicide, in the absence of defendant and in the absence of testimony that the son and his father acted together in the homicide, was inadmissible.

**5.—Evidence—Insanity—Bill of Exception.**

Where the bill of exception failed to show the acts or conduct of defendant upon which a nonexpert witness based her opinion that he was insane and beside himself at the time of the homicide and did not know what he was doing, such opinion was correctly excluded as evidence.

**6.—Same—Issue of Insanity Not Raised by the Evidence.**

Where the witnesses all stated that defendant was very angry when he learned that his daughter had been abducted, but none testified that his frenzy was of that degree which indicated that he did not know the right and wrong of the act he was perpetrating, there was no error in refusing to instruct the jury on insanity of the defendant.

**7.—Charge of the Court—Manslaughter—Adequate Cause.**

Where the evidence showed that two years before the homicide deceased had married one of defendant's daughters against his will, and he had induced another daughter shortly before the homicide to elope, and that defendants' wife informed defendant that deceased had debauched his younger daughter and induced her to elope and get married, and that thereupon defendant killed his son-in-law, it was error to confine adequate cause to the information thus given him by the wife in a charge on manslaughter.

Appeal from the District Court of Jack.    Tried below before Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, thirty-seven years imprisonment in the penitentiary.

The opinion states the case.

*Sil Stark, R. B. Seay,* and *Nicholson & Fitzgerald,* for appellant.— The State will not be allowed to resort to circumstantial evidence, when absolute, positive testimony is at hand.    Phillips case, 22 Texas Crim. App., 139; Hunnicutt's case, 20 Texas Crim. App., 632; Thompson's case, 30 Texas Crim. App., 325.

Where the evidence shows a number of conditions and circumstances tending either singly or collectively to constitute what a jury might consider adequate cause, the court should leave the jury at liberty to consider them all in determining whether or not adequate cause existed. Cochran v. State, 28 Texas Crim. App., 422; Wadlington v. State, 19 Texas Crim. App., 266; Orman v. State, 24 Texas Crim. App., 495; Bonner v. State, 29 Texas Crim. App., 223; Bracken v. State, 29 Texas Crim. App., 363.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at thirty-seven years confinement in the penitentiary; hence this appeal. This is the second appeal of this case. See Freeman v. State, 8 Texas Ct. Rep., 173. On the former appeal the judgment was reversed solely because of the refusal of the application for continuance. No other question was made.

Deceased, Tom Sallee, was the son-in-law of appellant, having married his oldest daughter some two years before the homicide. The evidence tends to show that appellant was opposed to this marriage, and deceased married his daughter without his consent. However, appellant appears to have made friends with him, and at the time of the homicide he was living some fifty yards from where appellant lived. Deceased had a nephew, also named Tom Sallee, who was called, in order to distinguish him from deceased, "Little Tom." On the day of the homicide little Tom Sallee procured a license to marry another daughter of appellant, named Bessie, who was at the time only 17 years of age. He procured this license without appellant's knowledge or consent, and eloped with his daughter. As soon as the appellant discovered the absence of his daughter, which was late in the evening, about dusk of the day of the homicide, he became very anxious and excited and began to hunt for his daughter. His wife informed him, according to appellant's testimony, that old Tom Sallee had ruined her, and then procured her to run off with little Tom Sallee. However, this feature of the case is controverted by the State. The testimony introduced by the State against appellant tended to dispute the fact that appellant's wife had informed him that old Tom Sallee had ruined Bessie; and tended further to show that he was informed little Tom Sallee had run off with his daughter and married her. We understand it to be agreed, by both the State and the defendant, that the homicide grew out of this elopement and marriage; and it is agreed by both State and defendant that as soon as appellant learned that his daughter had eloped with Little Tom Sallee he became exceedingly angry; that he accused Old Tom Sallee of being at the bottom of it, and he went at once into his house and procured a gun, and went immediately over to Tom Sallee's residence, declaring at the time that he intended to

kill Sallee, and forced his way into the house, shot deceased Salee, inflicting a wound upon him which caused his death. This is a sufficient statement of the case to present the errors assigned.

Appellant seriously insists that the court should have required the State to put Bert Freeman, son of defendant, on the witness stand, inasmuch as he was an eyewitness, and the State had failed to place any eyewitness on the stand. Appellant also showed that Bert Freeman was unfriendly to the appellant. In this connection he refers us to Phillips v. State, 22 Texas Crim. App., 139; Hunnicutt v. State, 20 Texas Crim. App., 632; Thompson v. State, 30 Texas Crim. App., 325. In view of the record in this case, we do not think that either of the cases referred to is authority to sustain appellant's contention. Thompson's case is the one most nearly in point in favor of appellant. But there the State relied on circumstantial evidence, when it was shown that there were a number of eyewitnesses. In this case, however, the proof was positive that appellant killed deceased and the State introduced his own evidence, adduced on a former trial, and relied on the circumstances as narrated by him. Under such circumstances the court did not err in refusing to require the State to place Bert Freeman on the stand. See Johnson v. State, 77 S. W. Rep., 15; Kidwell v. State, 35 Texas Crim. Rep., 264. In this connection appellant also insisted that the court erred in not permitting him to prove that Bert Freeman, appellant's son, had some few weeks before the trial procured appellant's arrest by making complaint against him and procuring him to be placed in jail. This was objected to by the State on the ground that whatever animus Bert Freeman entertained toward his father was immaterial, inasmuch as he was not a witness in the case. It occurs to us that this assignment was not well taken. Nor does the bill show any act of interference by Bert Freeman with regard to his sister, Mrs. Josie Patterson, and her husband Chas Patterson, or any person that would render evidence in regard to the animus that might have actuated Bert Freeman material in the case, or shows that he exercised any influence in the case with reference to said other witnesses. If Josie Patterson and her husband, Chas. Patterson, were testifying untruthfully, because of any influence being exercised on them by Bert Freeman, and the bill had shown this, such testimony might be relevant; but nothing of the kind is made manifest here.

It is insisted that the court erred in not permitting appellant to prove by his wife, that in a few minutes after the shooting Bert Freeman returned and said to her, "Gertie is safe, but he has killed old Tom Sallee." It is insisted that this was introduceable as a part of the res gestae, being only a very short while subsequent to the killing. It may be conceded that this was only a few minutes after the homicide; but something more is requisite in order to constitute a declaration a part of the res gestae than mere proximity in point of time. This was not only subsequent to the shooting, but was in a narrative form, show-

ing in itself a past transaction and was made by one not a participant in the homicide. See Felder v State, 23 Texas Crim. App., 477.

Nor was it permissible to show on the cross-examination of the witness Chas. Patterson, that after defendant had returned from Gladen's, which was just before the killing, as he rode up to the gate, that Bert Freeman remarked, in a tone loud enough to be heard by defendant, "Old Tom Sallee, the God-damn ———, is the cause of all this; and I ought to take my gun and go and kill him." The bill shows that appellant was not a party to this conversation; that he was at least thirty steps off, and witness himself could not state that appellant heard this remark. These parties were not shown to have acted together in the homicide. Indeed, the testimony shows that Bert interfered and endeavored to prevent his father from killing deceased. What others said and did, not shown to have been participated in by appellant, could not affect him.

Appellant complains of the action of the court rejecting the testimony of Mrs. Freeman as to her opinion of appellant's state of mind just before and at the time of the homicide. The bill shows that she had fully testified in regard to the actions, words and conduct of the defendant just before and immediately after the killing. These acts and conduct are not given in the bill; but it is stated that she would have given as her opinion, "that from the acts and appearances of defendant she believed him insane and beside himself at the time, and did not know what he was doing." In the shape in which the bill is presented, we do not feel authorized in holding that the witness, who was a nonexpert, was entitled to give her opinion. However, if the acts of appellant were shown in the bill, and these suggested that he was in a state of frenzy, utterly beside himself, then the witness should have been permitted to state her opinion as to his sanity. On this point appellant urges that the court should have given a charge on insanity. We have examined the record carefully, and fail to recall the testimony of any witness which requires a charge on this subject. The witnesses all seem to testify that appellant, when he learned that his daughter had been abducted by little Tom Sallee, was very angry. But none of them state that his frenzy was of that degree which indicated that he did not know the right and wrong of the act he was perpetrating. Perhaps, if Mrs. Freeman had been permitted to give her testimony, this issue might have been raised sufficiently to authorize its submission to the jury. But as the record is presented here, we do not believe the court erred in refusing to instruct the jury on the subject of insanity.

Appellant contends that the court erred in its charge on manslaughter, or rather that the court erred in refusing to give appellant's requested special instructions on the subject of manslaughter. The court charged the jury on manslaughter—gave the jury the statutory definition of manslaughter; but in defining adequate cause, it is insisted that the

court's charge was too restrictive, judged from the standpoint of the evidence. The court told the jury that a provocation which caused the passion must have been given by the party killed, and that it must be such a provocation as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. And then told the jury that insulting words or conduct of the person killed toward a female relative of the party guilty of the homicide, when the killing takes place at the first meeting of the parties after being informed of such insulting conduct towards such female relative, is adequate cause. And then, in applying the law to the facts of the case, he confined the jury to this cause of provocation in the following language: "If you believe that defendant did in Jack County, Texas, on or about the 30th day of January, 1903, with a gun, shoot and kill Tom Sallee, and if you believe that shortly before the killing, the wife of the defendant informed him (defendant) that the said Tom Sallee had ruined Bessie, the daughter of defendant; and if you believe defendant believed that such information was true, and if you believe that the defendant upon being so informed went to the home of the said Tom Sallee in Jack County, Texas, and did with a gun shoot and kill said Tom Sallee, and if you believe that at the time of such shooting the mind of the defendant was so aroused by reason of such information as to render it incapable of cool reflection, you will find the defendant guilty of manslaughter," etc. Nowhere in the charge does the court authorize the jury to look to' any other facts and circumstances in evidence concerning the killing, which they could use to intensify the provocation at the time. In order to remedy this defect in the charge, appellant requested three special instructions. One of these embraced the cause of provocation as embodied in the court's charge; but in that connection also told the jury they could look to the former conduct of deceased in marrying one of his daughters against defendant's consent, and then aiding little Tom Sallee in eloping with and marrying the other. In our opinion, this instruction was called for by the evidence. And again, in another charge, the elopement and marriage of deceased with appellant's oldest daughter, and the circumstances connected, therewith, and his action in connection with the subsequent marriage of little Tom Sallee with another daughter of appellant without his consent, are treated as in themselves adequate causes to engender passion. We think a charge embracing this view of the case should have been presented to the jury. As the record is presented to us the jury might not have believed (as judged from the verdict, they did' not believe) that appellant's wife told him just before he committed the homicide, that old Tom Sallee had ruined Bessie, and had then run her off with little Tom Sallee; but under the charge they were, in effect, told that this was the only adequate cause presented for their consideration. On the other hand, if the court had told them that they could look to the former elopement by deceased with appellant's daughter, and all

the circumstances connected therewith, as well as the circumstances connected with the subsequent elopement of little Tom Sallee with their other daughter, they might have believed that these matters were sufficient to engender passion in a person of ordinary temper, and sufficient to engender passion in appellant's mind so as to render him incapable of cool reflection. Moreover, if they had been instructed that, although they might not believe appellant's wife told him that old Tom had ruined Bessie, and then aided little Tom to run off with her, they might have given credit to the evidence which showed the elopement of deceased with appellant's oldest daughter and his marriage with her; and the subsequent elopement of his other daughter (Bessie) with little Tom Sallee, and deceased's connection therewith; and they might have believed that this was the real cause of the killing, and if this matter had been properly submitted to them for, their determination as adequate cause they might have found appellant guilty of manslaughter. The question presented in this last proposition involves the adequacy of this as a provocation. It is not so laid down in the statute. But the adequate causes given in the statute are held to be merely illustrative of what may constitute adequate causes. Of course, it is often difficult to tell what may constitute adequate cause to reduce an offense which would otherwise be murder to manslaughter. The only limitation created by statute is, that it must be such as would produce a degree of anger, etc., in a person of ordinary temper sufficient to render the mind incapable of cool reflection. While the facts are to be found by the jury that go to make up adequate cause, still, as a matter of law, this must always be passed upon by the court; and in measuring this question we can only appeal to human nature, and to those causes which in the experience of men are calculated to evoke passion in persons of ordinary temper. In these matters the law regards the affection of kinship, which certainly embraces that of parent and child. Here we have one of appellant's children taken from under his roof, without his consent, by deceased, who marries her some two years before the homicide. Appellant became reconciled to this, according to the theory advanced by him, but suddenly and without any warning another daughter is taken away from him in a clandestine manner—she has not yet reached the age at which she can marry without her parent's consent; the father learns of this; ascertains that she is taken away and married to a person whom he does not approve; that the same man who had previously taken one of his daughters without his consent was instrumental in taking away the latter. Who shall say under the circumstances narrated that this was not a sufficient cause to wring a father's heart and to excite his passion? Under the proof presented in this record, there is no question but that he was greatly excited; and if this had been submitted to the jury, for them to determine the adequacy of the provocation, or if they believed the attending circumstances showed it to be adequate cause, they should so regard it; and if they believed that appellant's passion was aroused on that account, and he was rendered

incapable of cool reflection, and that under such circumstances he slew him, he would be guilty of no graver offense than manslaughter. At any rate, we believe that this view of the case should have been presented to the jury in order that they might pass upon the question. But the court, instead of doing so, as has been stated, instructed the jury that the evidence presented only one phase of adequate cause. The jury evidently did not believe the testimony in that regard; but if the whole case had been presented to them they might have rendered a different verdict. Because of the failure of the court to properly instruct the jury on manslaughter, the judgment is reversed and the cause remanded.

*Reversed and remanded.*