# JANUARY, 1921

JOHN W. LOWE v. THE STATE.

No. 5797.  Decided June 9, 1920.

Rehearing denied January 5, 1921.

1.—Murder—Jury and Jury Law—Challenge for Cause—Waiver—Motion for New Trial.

Where, upon trial of murder the motion for new trial complained of the action of the court in not standing aside a certain juror upon his *voir dire*

because he had come to a conclusion about the case that would influence his verdict from what he had read and heard, and that the court upon his own motion should have done so, and that his failure to do so was error, but it appeared from the record on appeal that defendant had opportunity to challenge the said juror for cause or peremptorily, but that he accepted him and permitted him to sit as a juror in the case and did not then reserve a bill of exceptions to the action of the court, but urged his objections for the first time in his motion for new trial, there was no reversible error. Following Jones v. State, 37 Texas Crim. Rep., 433, and other cases.

### 2.—Same—Rule Stated—Waiver—Accepting Juror.

If the defendant accept a juror after learning that he has an opinion he cannot afterwards complain that the juror was not fair and impartial. Following Tinker v. State, 58 Texas Crim. Rep., 321, and other cases.

### 3.—Same—Rule Stated—Challenge for Cause—Statutes Construed—Waiver.

All other grounds of challenge for cause may be waived, except that the proposed juror has been convicted of theft or felony, or that he is under indictment for theft or felony; that he is insane, or so physically defective as to render him unfit. Following Poole v. State, 45 Texas Crim. Rep., 361. Distinguishing Spear v. State, 16 Texas Crim. App., 113, and other cases.

### 4.—Same—Statutes Construed—Trial Judge—Challenge for Cause.

The duty is not imposed upon the trial judge of his own motion to discharge a juror whose examination shows him subject to challenge under Subdivision 13, Article 837, C. C. P., unless one of the parties sees fit to make such challenge, and the third, fourth, and fifth cause of challenge, made in Article 636 C. C. P., although both parties may consent, exclude those not so named and the court cannot so change this article as to make it also include the thirteenth cause for challenge. Distinguishing Steagald v. State, 22 Texas Crim. App., 488, and other cases.

### 5.—Same—Motion for New Trial—Limiting Testimony—Charge of Court.

Where, upon appeal of a conviction of murder, complaint was made in appellant's motion for new trial that the court failed to limit in his charge to the jury testimony offered by appellant to impeach a certain State's witness, but the rule limiting such testimony does not apply to the testimony in the instant case, and no charge was requested presenting this issue, there was no reversible error. Following Bedford v. State, 75 Texas Crim. Rep., 309. Qualifying Bell v. State, 17 Texas Crim. App., 538.

### 6.—Same—Misconduct of Jury—Communications to Jurors—Rule Stated.

While communications to the jury, except within statutory limitations, are improper and should not be permitted, they must be brought within some forbiddance of the statute, and where it appeared from the record that none of the communications referred to the case on trial, and nothing appears which indicates error or abuse of discretion of the trial court in overruling this part of the motion for new trial, there was no reversible error.

### 7.—Same—Evidence—Bill of Exceptions—Practice on Appeal.

Where, upon trial of murder, defendant objected to the State's asking him and requiring him to answer the question as to whether he had been gambling and had repeatedly given checks and turned them down and when that was found out he got mad, etc., but the bill of exceptions failed to state what answer defendant made to such question or in what connection the question

was asked, etc., and it being the theory of the State to show motive, caused by certain gambling transactions, etc., and that, therefore, the question was legitimate, there was no reversible error. Following Chapman v. State, 37 Texas Crim. Rep., 173, and other cases.

### 8.—Same—Evidence—Rule Stated—Character of Accused.

That an effect of such testimony with reference to said gambling transactions would be to affect the character of the accused, is not sufficient objection if the evidence be otherwise admissible, as defendant had the right to a requested charge limiting the purpose for which same was admitted.

### 9.—Same—Separation of the Jury—Arraignment—Practice in District Court.

Where, upon trial of murder, the record showed on appeal that after the jury was selected and sworn and before arraignment, while leaving the courthouse at night, one of the jurors, in going down the stairway, became separated from the other jurors, and finding out this fact asked the district attorney where the jury was and at once rejoined them, there was no reversible error. Following Latham v. State, 75 Texas Crim. Rep., 575, and other cases.

### —Same—Credibility of Witness—Grand Jury—Rule Stated.

A witness may be asked as affecting his credibility, whether at other times and places in narrating the occurrence testified about, whether he gave testimony different from that given on the trial, and this includes statements made before the grand jury. Following Clanton v. State, 13 Texas Crim. App., 153, and other cases.

### 11.—Same—Court Room—Absence of Defendant.

Where, appellant claims that he was absent from the courtroom while the trial was in progress, but the testimony taken upon this issue failed to show such absence, there was no reversible error.

### 12.—Same—Evidence—Bill of Exceptions—Gambling Transaction.

Where, the bill of exceptions objecting to certain testimony of defendant concerning gambling transactions and debt, failed to set out the questions objected to and the answers thereto, the same cannot be considered on appeal.

### 13.—Same—Evidence—Opinion of Witness—Bill of Exceptions.

Where, appellant in his bill of exceptions as to the rejection of the testimony of his son, as to statements made by defendant's wife, subsequent to the shooting, was qualified by the court that it was not shown how near in point of time the statement was to the time of the shooting, and that it was merely opinion testimony, there was no reversible error.

### 14.—Same—Sufficiency of the Evidence—Practice on Appeal.

Where appellant seemed to have had a fair trial, had taken no exceptions to the charge of the court, and all of his requested charges were permitted except one, of which no complaint was made, and the evidence was sufficient to sustain the conviction, there was no reversible error.

### 15.—Same—Rehearing—Challenge for Cause—Jury and Jury Law.

This court has been unable to find a single authority which holds that if a juror, competent under the statute but subject to challenge for cause,

sits as a member of the jury with the consent of the accused that this is such error as requires a reversal, but the contrary doctrine seems to prevail, and the contention of appellant that in as much as our Constitution guarantees a trial by an impartial jury, that any statute giving him the right to waive the .challenge for cause when such cause consists of a formed opinion would be unconstitutional, etc., is untenable. Following Gibbons v. State, 6 Texas, 343; Keaton v. State, 41 Texas Crim. Rep., 621, and other cases.

#### 16.—Same—Statutes Construed—Challenges—Practice in Trial Court.

Our conclusion as to the Thirteenth sub-division of Article 636, (now Article 692), is that its language is not intended to require the trial court to act independently of a challenge for cause by either party, but to accurately prescribe the test which shall be legally sufficient to sustain such challenge when made. Following Greer v. State, 14 Texas Crim. App., 479, and other cases; distinguishing Jones v. State, 106 S. W. Rep., 345. Qualifying Spear v. State, 16 Texas Crim. App., 90; Rockhold v. State, 15 Texas Crim. App., 577.

#### 17.—Same—Separation of Jury—Rule Stated—Presumption.

This court has always held that in such case, as to separation of jury, if the State satisfactorily meets the presumption of injury from such separation by affirmative proof to the contrary, that the mere fact of a short separation of the jury in the instant case would not constitute reversible error. Following Mauny v. State, 85 Texas Crim. Rep., 184; and other cases.

#### 18.—Same—Evidence—Bill of Exceptions—Bystander.

Where it was not stated by the bill of exceptions that the statement made by the wife of defendant offered in evidence was made in the presence of defendant, nor how near same occurred in point of time to the shooting, or that such statement was more than the opinion of the wife, there was no . error in excluding same. Following Wade v. State, 48 Texas Crim. Rep., 513, and other cases.

Appeal from the District Court of Wilson. Tried below before the Honorable Covey C. Thomas.

Appeal from a conviction of murder; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*R. R. Smith, J. Ed. Canfield, H. A. Paulus, Fly & Ragsdale* and *Dibrell & Mosheim,* for appellant.—On question of challenge to jurors: Ross v. State, 53 Texas Crim. Rep., 162; Jones v. State, 106 S. W. Rep., 347, and cases cited in opinion.

On question of refusing requested charge upon subject of impeachment of witness: Bell v. State, 17 Texas Crim. App., 538.

On question of reflecting on defendant's character by his cross examination with reference to gambling transactions: Hudson v. State, 55 S. W. Rep., 492; Jennings v. State, 57 id., 642; McCue v. State, 170 id., 295; Dysart v. State, 79 id., 534; Davis v. State, 172 id., 978.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, Judge.—Appellant was convicted of the murder of one Tullos, in the District Court of Wilson County, and his punishment fixed at confinement in the penitentiary for life. The case originated in Atascosa County, and was sent to Wilson County upon change of venue. It is urged that the trial court should have discharged juror Darelik of the court's own motion, and that his failure to do so was error. From the record, it appears that when the work of impaneling the jury was begun, this was the first juror to be examined, and that he stated in substance that from reading the papers and hearing talk upon the streets, he had come to a conclusion about the case that would influence his verdict. He does not appear to have been asked and answered the question as to whether he could try the case under the law and evidence, and lay aside such opinion. The understanding of the English language by said juror, and of legal terms, was not made clear by the examination given him. After the juror stated to the court that he had an opinion which he thought would influence his verdict, the judge asked appellant's counsel if they desired to challenge the juror for cause, stating that if they did so desire, he would sustain their challenge. Appellant's attorney declined to challenge said juror for cause, and when the State accepted him, appellant also accepted him; and he was duly sworn, and sat as a juror. No bill of exceptions was taken or reserved then by appellant to the taking of said juror. That the juror was objectionable was first disclosed in appellant's motion for a new trial. A bill of exceptions was taken to the court's refusal to grant a new trial upon this ground. In his explanation affixed to said bill, the trial court states that appellant declined to challenge the juror for cause, and further, that appellant did not use a peremptory challenge upon him, and the jury was obtained before appellant had exhausted his peremptory challenges. We might content ourselves with saying that it is too late after the verdict, to complain of errors committed in the impaneling or organization of the jury. Jones v. State, 37 Texas Crim. Rep., 433; Moore v. State, 55 Texas Crim. Rep., 3; Ellington v. State, 63 Texas Crim. Rep., 427; Kinch v. State, 70 Texas Crim. Rep., 419, 156 S. W. Rep., 648. As said by Judge Hurt in Caldwell v. State, 12 Texas Crim. App., 316: "Will this court reverse a judgment for these irregularities, when the defendant made no objection at the time, taking his chance of being acquited by this jury thus sworn, and holding in reserve this matter to be used in his motion for new trial, and, on failure then, to be used in this court as ground for reversal of the judgment? We think not." As said by Judge Davidson, in the Kinch case, *supra,* "Appellant went to trial without objection, accepting the jury, reserving no exception. There was no challenge to the array, nor was there an exception reserved to any juror who sat upon the trial  . . . . If appellant had objected to these jurors, or to the array before the selection of the jury, his case would have presented a different proposition. We, therefore, hold that even had the matter been presented by bill of exceptions, we could not re-

verse, inasmuch as appellant accepted the jury without objection, and only suggests it after trial, in the agreed statement of facts." If the defendant accepts a juror after learning that he has an opinion, he cannot afterward complain that the juror was not fair and impartial. Kirk v. State, 37 S. W. Rep., 440; Aud et al. v. State, 36 Texas Crim. Rep., 76; Armstrong v. State, 34 Texas Crim. Rep., 248; Hughes v. State, 60 S. W. Rep., 565; Tinker v. State, 58 Texas Crim. Rep., 321; Powers v. State, 69 Texas Crim. Rep., 494, 154 S. W. Rep., 1020.

All other grounds of challenge for cause may be waived, except that the proposed juror has been convicted of theft or felony, or that he is under indictment for theft or felony; that he is insane, or so physically defective as to render him unfit. Art. 695, Vernon's C. C. P., Greer v. State, 14 Texas Crim. App., 179; Poole v. State, 45 Texas Crim. Rep., 361.

Appellant cites authorities in support of his contention, but an examination of each of them discloses that in none does there appear a state of case at all similar to the one before us. In the Stagner case, 9 Texas Crim. App., 450, appellant exhausted all his peremptory challenges, and was forced to take as jurors certain persons who had opinions which they stated would require evidence to change, to each of whom he made challenge for cause, which was overruled. All the expressions used by the court in the Stagner case are based on and must be construed in the light of these facts; nor are they to be construed as imposing any duty on the court of his own motion to discharge a juror whose examination shows him subject to challenge for cause, under Subdivision 13, of Article 837, C. C. P., unless one of the parties sees fit to make such challenge. For us to hold otherwise would be for us to constitute of ourselves the law-making body, and to add to and change the terms of Article 695, wherein it is stated that no juror shall be impanelled when it appears that he is subject to either the third, fourth or fifth cause of challenge laid in Article 636, although both parties may consent. It would be for us to so change this article as to make it also include the thirteenth cause for challenge. We do not understand this to be our province. Specific statutory mention of these three grounds excludes those not so named.

The Spear case, 16 Texas Crim. App., 113, is also cited, but in that case a challenge for cause was sustained, and all in that opinion which is authoritative relates to the correctness of the ruling of the trial court in upholding a challenge for cause. The Steagald case, 22 Texas Crim. App., 488, also cited, is against appellant's contention. The court there upheld the action of the trial court in overruling the appellant's challenge for cause to a juror, and aptly said: "Moreover, it is not shown that defendant had exhausted his peremptory challenges, and unless that is shown, he has no right to complain. Loggins v. State, 12 Texas Crim. App., 65; Bean v. State, 17 Texas Crim. App., 60; Heskew v. State, 17 Texas Crim. App., 161."

In the Suit case, 30 Texas Crim. App., 323, also cited, this Court held the action of the trial court correct in overruling the challenge for ·cause. In the Randle case, also cited, 34 Texas Crim. Rep., 43, the only question before the court remotely related, was the question of a change of venue, and the discussion of said question, as relating to the one before us, is merely argumentative. In the Parker case, 45 Texas Crim. Rep., 336, also cited, the question involved was the correctness of the action of the trial court in overruling a challenge for cause. No case is cited, nor do we know of any, in which, on a state of facts similar to the one before us, it is held to be the duty of the trial court to grant a new trial where a juror was accepted by the accused, with full knowledge of the matter set up in the motion for new trial.

Complaint was also made in appellant's motion for new trial, that the court failed to limit in his charge to the jury, the testimony offered by appellant to impeach one Will Rainey, who was a State witness. We do not understand the rule to be that such testimony should be limited. Givens v. State, 35 Texas Crim. Rep., 564; Ogle v. State, 58 S. W. Rep., 1004; Thompson v. State, 55 Texas Crim. Rep., 120; Ellis v. State, 69 Texas Crim. Rep., 468, 1012. If such limitation were proper, the failure of the court to so state in his main charge was not excepted to, nor was any special charge asked presenting the issue, and in such case no error would appear. Art. 743 Vernon's C. C. P., Bedford v. State, 75 Texas Crim. Rep., 309, 170 S. W. Rep., 727; Hawkins v. State, 74 Texas Crim. Rep., 462, 168 S. W. Rep., 93; Burge v. State, 73 Texas Crim. Rep., 505, 167 S. W. Rep., 63; Roberts v. State, 74 Texas Crim. Rep., 450, 168 S. W. Rep., 100; Johns v. State, 76 Texas Crim. Rep., 303, 174 S. W. Rep., 610.

The only case cited by appellant, supporting his contention .in this regard, is Bell v. State, 17 Texas Crim. App. We observe that the law requiring exceptions taken to the charge, or special charges requested, has been changed since the rendition of this decision.

Misconduct of the jury is set up in the motion for new trial. Aside from the general matters averred, it is stated that two jurors were communicated with while on the jury by persons interested in securing a conviction, and that the communications were injurious to appellant. The jurors named were Myers and Clark. Subdivision 7, of Article 837, Vernon's C. C. P., states that a new trial shall be granted when the jury, after retirement, have received other testimony; or where a juror has conversed with any person in regard to the case, etc. Our authorities hold that it must appear that there was a communication, that it related to the case, and that no injury could or did follow. See authorities collated, page 791, Vernon's C. C. P., Sec. 598, Branch's Ann. Penal Code. Upon the hearing of the facts as to this misconduct when the motion for new trial was presented, it was testified by Spencer Mc-Kenzie that as the jury were passing him at one time he remarked to juror Myers, "Why don't you fellows get a shave," and that either at that time, or on another occasion, he said to juror Clark, "Are you com-

ing out to the lodge tonight?" The juror Myers testified that he heard McKenzie's remark, but juror Clark testified that he did not. This comprehends the matter. Neither remark referred to the case. Nothing appears which indicates error or abuse of the trial court's discretion in overruling this part of the motion for new trial. Communications with the jury, except within statutory limitation, are improper, and should not be permitted, but to constitute error, they must be brought within some forbiddance of the statute.

Appellant's bill of exceptions No. 5 states that he objected to the State asking, and to his being required to answer while a witness, the following question: "I will ask you if it is not true that it was discussed in that conversation (having reference to a conversation inquired about by the State) that you had been gambling and had repeatedly given checks and turned them down and when that was found out, you got mad at them too." It is stated as a part of said bill that appellant was also compelled to answer other questions on the same subject, but the latter questions are not set out, and cannot, therefore, be considered by us. What answer, if any, appellant made to the foregoing question, is not stated, nor is there presented the connection or setting of said question, so that we may be informed and know that the objection is sound. If we understand the record, the State's theory of motive for the killing, was ill-feeling on the part of appellant toward one or both of the men killed by him, caused by certain gambling transactions and gambling debts owed by appellant. To support such theory, it might easily become material to show that appellant had been gambling, had given checks, and had them turned down, and in conversations relative thereto, had gotten "mad at them too." It is well settled that a bill must contain such showing as will enable us to see therefrom that the complaint is meritorious. Also, that the answer of the witness if complained of, must appear. Vernon's C. C. P., pp. 537-538; Lawson v. State, 50 S. W. Rep., 346; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Chapman v. State, 37 Texas Crim. Rep., 173; Ford v. State, 40 Texas Crim. Rep., 283; Branch's Ann. Penal Code. Secs. 208, 209 and 210.

That an effect of such testimony would be to affect the character of the accused, is not sufficient objection if the evidence be otherwise admissible. In such case, if such be the probable or possible result of such testimony, appellant has the right to request a charge limiting the purpose for which same was admitted, but none was asked in the instant case.

It is also urged that there was a separation of the jury, and that this was erroneous. It was shown that after the jury were selected and sworn, and before arraignment, while leaving the courthouse at night, the juror Cox, understanding that the jury were directed to go down a certain stairway, went down same. Other men were also going down said stairway, whom he supposed to be jurors, but when he got to the foot of the stairs, he discovered that the other jurors were not with

him. He asked a nearby man, who turned out to be the district attorney, where the jury was, and at once returned to the head of the stairs and rejoined them. No discussion of, or reference was made to the case. This was all that occurred, as shown by the testimony. This was no misconduct of the jury, nor was it such forbidden separation as is embraced in the terms of Article 745, Vernon's C. C. P. Latham v. State, 75 Texas Crim. Rep., 575, 172 S. W. Rep., 797; Guerrero v. State, 75 Texas Crim. Rep., 558, 171 S. W. Rep., 721; Webb v. State, 69 Texas Crim. Rep., 413, 154 S. W. Rep., 1013; Robinson v. State, 58 Texas Crim. Rep., 550; Champ v. State, 32 Texas Crim. Rep., 87; Jones v. State, 69 Texas Crim. Rep., 447, 153 S. W. Rep., 897; Bailey v. State, 26 Texas Crim. App., 706.

Appellant's witness Burkett was asked, over objection, if it was not true that when before the grand jury testifying in regard to this transaction, he failed to mention certain matters now given in testimony by him. The answer of the witness is not given in the bill of exceptions, but from certain statements therein, we are led to believe that he stated that such question was not asked him when before the grand jury. A witness may be asked, as affecting his credibility, whether at other times and places, in narrating the occurence testified about, he gave testimony different from that now given. Nor would the fact that the attempted predicate was as to statements made before the grand jury, affect the admissibility of such question and its answer. A witness may be impeached by statements made, or omissions, relative to his testimony, before a grand jury. Vernon's C. C. P., p. 183, and cases cited; Clanton v. State, 13 Texas Crim. App., 153; Rippey v. State, 29 Texas Crim. App., 43; Sec. 177, Branch's Ann. Penal Code.

It is claimed by appellant that he was absent from the courtroom while the trial was in progress. The maker of the affidavit relative to this matter, appended to the motion for new trial, testified before the trial court upon the hearing of the motion for new trial, and his testimony fails to show that appellant so absented himself.

The bill of exceptions objecting to the testimony of the witness Despain, and certain parts of the testimony of appellant, has already been substantially disposed of in what we have said in reference to the bill relating to questions asked appellant concerning gambling transactions and debts. This bill of exceptions is very general, and does not set out the questions objected to, and their answers, but merely states generally that the court erred in allowing the State to prove by these witnesses that appellant gambled in July or August, and had so done for several years. For aught we know of the connection or circumstances, or are informed by the bill of exceptions, these matters may have been pertinent and material.

Appellant also has a bill of exceptions to the rejection of the testimony of his son, as to a statement made by appellant's wife, the mother of said witness, subsequent to the shooting. The trial court qualified this bill by saying that it was not shown how near in point of time the

statement was to the time of the shooting, and further, that in his opinion, the statement made was but the opinion of the lady. We think the conclusions of the trial court fully justified in both respects.

The matter complained of in appellant's bill of exceptions No. 11 has already been substantially disposed of in what has been said above, relative to the testimony about gambling transactions and debts of appellant.

Appellant seems to have had a fair trial. No exceptions appear to have been taken to the charge as given. A number of special instructions were asked by appellant, and all given save one, and no complaint is made before this Court of the refusal of same. A jury was selected without exhausting the peremptory challenge of the appellant. We see no good that can come from an extensive statement of the facts of this tragedy. Appellant, with a Winchester rifle, shot and killed two unarmed men, upon the streets of the town of Jourdanton, Atascosa County, Texas. No claim is here made that the verdict was not fully supported by the testimony.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

January 5, 1921.

LATTIMORE, JUDGE.—In his motion for rehearing appellant urges error in the refusal of his motion for new trial upon several grounds, mainly because the trial court held that no error had been committed in allowing the juror Darelik to sit in the trial of the case, and also, that there was no error shown in the separation of the jury.

Deference to the forcible argument of appellant's counsel and a desire to be right in conclusion has led us to examine many authorities and make careful study of these questions. We have been unable to find a single authority which holds that if a juror, competent under the statute, but subject to challenge for cause, sits as a member of the jury with the consent of the accused, this is such error as requires reversal. The contrary doctrine seems to be held by all courts and laid down by the law writers. Lord Tenterden in Rex v. Sutton, 8th Barn & C, 417, says that he is not aware that a new trial had ever been granted on the ground that a juror was liable to be challenged if the party had an opportunity of making the challenge and did not exercise it. Mr. Bishop in his New Procedure, Second Edition, Section 932, says that one may waive objections to a juror, and while the jury is being made up, if he is aware of a cause for disqualification and does not make such challenge, it is too late afterward. Clark's Criminal Procedure, page 451 says: "If the defendant knew or could have known that a juror is disqualified for cause, and fails to object to him

while the jury is being impaneled, he waives his objection and can not afterward raise it." Volume 12, page 436, Encyclopedia of Pleading and Practice states the rule to be that "the challenge for cause may be waived by neglect or omission to challenge when the opportunity is afforded, or by acceptance of the juror." This authority, Volume 12, page 538, also says that it is undoubtedly the rule that challenge must be interposed when the jurors "come to book," and that after they have been sworn and charged with the case the right of challenge for existing cause is lost, and especially is such the case when the incompetency or disqualification was known to the complaining party. American & English Encyclopedia of Law, Vol. 17, page 1161 lays down the rule that an objection to a juror for incompetence is waived if not made before verdict, and referring to the fact that all the courts are not in unison as to how far such objections may be made ground of a motion for new trial, this authority states: "It is agreed that one who knew of a ground of disqualification before or during the trial cannot present such objection for the first time after verdict, and he must show the actual want of such knowledge on his part." In Thompson on Trials, Section 114, it is asserted that a known challenge for cause is waived by withholding same and raising it for the first time after verdict. In said Section appears the following language: "For counsel to sit in silence when the Court is embarrassed in the process of empaneling a jury, declining to take action on suggestions of the court, and answering that they have nothing to say, and then raise the objection in case the verdict goes against them is trifling with the court and with the administration of justice which is not to be tolerated on the trial of the gravest offenses." So in People v. Scott, 56 Mich., page 154, Judge Cooley, discussing the proposition that an objection to a juror, known during trial, comes too late when first raised after verdict, says: "The notion that an accused party may at pleasure object to the want of qualifications in a juror for the first time after verdict against him, has no more basis in law or reason that a like claim would have if applied to the main issue on the trial. Every accused party is entitled under the constitution to a trial on the merits; and if he declines to produce his evidence when his case is brought on, he may, on motion for new trial, allege his inability to waive a constitutional right with quite as much plausibility as this respondent does in this case. The conclusive answer would be that the case is passed to judgment, and the judgment determines that rights have been observed, and is in fact the conclusion of the competent tribunal in respect to them, upon all rights claimed in the political society there must be some authority vested with powers of final judgment, and there must be rules to determine when and how such rights shall be claimed. If a party in any case fails to make his right appear until judgment has passed against him, the judgment if regular leaves nothing open to inquiry afterward." Stewart v. State, 15 Ohio State Rep., 159, exhibits a case wherein it was discovered during the trial that a juror was not competent. The trial

court asked the accused what he had to say, and he objected to proceeding with the trial, but further stated that he waived none of his rights. The court discharged the jury. Upon another trial a plea of jeopardy was presented. The Supreme Court affirmed a conviction, and speaking of what occurred during the first trial said: "Looking to the whole colloquy which took place between the court and counsel, it is quite evident that the defendant desired to be regarded as consenting to nothing which might in any respect prejudice his possible rights in any stage of the trials, and that he desired to secure for himself by objecting to proceeding with the trial, the full right and benefit in the event of conviction, of a motion for new trial on account of the facts then disclosed; and at the same time if possible to obtain all the chances from the jury then impanneled by refusing to consent to its discharge. He had a clear right to one fair and legal trial by an impartial jury, but his right to demand two trials as a prerequisite to a legal conviction and sentence cannot be conceded. 'All general rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice.' The plaintiff in error has no right to complain because his own objection was not overruled . . . The discharge of the jury was not without his consent, and did not operate as a bar to another prosecution." So in Young v. State, 90 Md., 579, the court discussing an objection made to a juror for cause after trial had begun, said, "The general practice permits here, and in most if not all of the courts having our system of jurisprudence, that challenges for cause must be made before the juror is sworn, and that rule is without exception in all cases where the party objecting to the qualification of the juror had knowledge at that time of the circumstances disqualifying, or could have known same by the exercise of reasonable diligence. If with such knowledge he fails to make his challenge before the jury is sworn, it must be deemed to have been waived, no matter how good may have been his cause for challenge." In the instant case the appellant insists that inasmuch as our constitution guarantees a trial by an impartial jury, any statute giving him the right to waive a challenge for cause when such cause consists of a formed opinion, would be in derogation of such constitutional provision, and therefore inoperative. We find that in most of the constitutions of the States of the Union the same guarantee is given, and this is true of each of the States whose opinions follow. In Keener v. State, 18 Ga., 194, wherein a juror stated that he had an opinio 1 on the case, no challenge was made and the juror served. In affirming the case the Supreme Court said this question as to the competence of the juror was not one they could be called on to decide, as there was no attempt to get rid of him in the trial court, but he had been accepted as he was without objection, and that the maxim applied that no one could take advantage of a wrong to which he had knowingly agreed. Many authorities were cited that an omission to challenge a juror for a known cause operates as a waiver, and it would be

most unreasonable to allow a party the benefit of a verdict, if favorable, and of a new trial if the result be adverse. In Van Blaricun v. People, 16 Ill., 364, a juror answered that he had an opinion about the case and the defense accepted him, but the trial court stood him aside of his own motion, and the case was reversed by the Supreme Court for such action. In Booby v. State, 4 Yerg, 111, the Supreme Court of Tennessee held in a case where it was set up in motion for new trial that a juror had bet on the outcome of the case, that such conduct was a gross immorality, and severely reprehensible, but declined to reverse the case because it was not shown that this matter was not known to the accused at the time of trial. The court said: "The law will not permit one to lie by taking the chance of a verdict in his favor, and if adverse, to bring forward his exception, waived at the proper time for making it." In Lisle v. State, 6 Mo., 420, the court said:

"The only other question for consideration, is the propriety of refusing to grant a new trial in consequence of the alleged incompetency of one of the jurors. Whether this juror was incompetent or not, I do not think it necessary, in this case to determine. It has been suggested in argument, that the section of our statute, (Rev. Co., 290, pp. 11), which provides that a juror, who declares on his *voir dire* that he has formed and expressed an opinion, may nevertheless be sworn if that opinion be grounded merely on rumor and is not such as could bias or prejudice his mind, is an evasion of the constitutional requisition, which declares that every offender shall have a fair and impartial jury. It is supposed, that a juror who has formed an opinion, no matter from what sources of information, is not such an impartial juror as the constitution contemplates. It may be said however in relation to this, that it might be a nice point in metaphysics to determine how far the mind was compelled to assent or to dissent from the truth of a supposed state of facts, when presented to its contemplation, and that for the ordinary purposes of life, we are well assured, that an opinion or rather inclination of the judgment, founded on a supposed state of facts, when it is unaccompanied with any prejudice or ill will to the parties concerned, will very readily be removed and changed, by the presentation of a different state of facts, and the person whose judgment is involved is as capable of doing justice as though he had never heard any incorrect or imperfect statements in relation to the matter. However this may be, it is of no consequence for the decision of this case, whether the juror was incompetent or not. If the juror was incompetent, and that incompetency was known to the defendant before the trial, he cannot now seek to reverse the judgment on that ground.

"This is not only consistent with justice, but amply sustained by the authorities, without, so far as I have been able to discover, a dissenting voice. 3 Marsh, 330. 1 Binney, 27. 4 Bibb, 272. 4 Littell, 118. The case of Bell v. Howard, is directly in point. The court said, in relation to such an objection, 'It is apparent, that when the juror was called on

the trial, he disclosed the fact of his having made up an opinion before he was sworn. Bell should therefore have objected to the juror before he was sworn, and having failed to do so, it was too late after trial, to make the incompetency of the juror a ground for a new trial, 4 Litt., 118."

"The consequences which would follow any other doctrine seem indeed too monstrous to be tolerated. I apprehend, on this point, there can be no difference in the rule in civil and criminal cases, and if in civil cases, either party may receive incompetent jurors, and after taking the chances of the opinion of the juror being in his favor, make it a ground for reversing the verdict, when it is discovered to be otherwise, there could be no end to litigation.

"It has been urged, however, that the answer of Morrow, the juror, to the double interrogatory propounded to him, being general, might have been applied by the defendant to either branch of the question, and he might have been understood by defendant to have formed an opinion, but not to have expressed one. If the answer of the juror was equivocal, it was the duty of the defendant to have obtained a more satisfactory one, at the time. He had ample power for so doing, and in the event of a remaining dissatisfaction, he had his peremptory challenges, by which the juror could have been disposed of. Our law, in tenderness to human life, has thrown most ample guards around the accused; it not only yields to every just requisition, but allows much even to the whims and caprices of the defendant, so that not only an impartial public may concur in the justice of his sentence, but even the prisoner himself may be satisfied, that all his fancies have been consulted, in the choice of his triers. Counsel are assigned him to enable him judiciously to use all these advantages, he cannot afterward complain of his own laches. Judgment affirmed."

So in the case of Givens v. State, 6 Texas, 343, our Supreme Court said that the alleged partiality of a juror did not entitle the defendant to a new trial. The court used the following language: "The objection to the juror was known to the defendant before the trial; and it is well settled that when a party has accepted a juror knowing the objection he cannot after verdict make that objection ground for a new trial. . . . The law will not permit a party by thus holding his objection to the juror in reserve to take two chances of obtaining a verdict in his favor. If the defendant supposed the juror partial, and indisposed to give him a fair trial he should have made his objection known before accepting him as a juror. Not having done so, he waived the objection." So in Hanks v. State, 21 Texas, 526, complaint was first made in motion for new trial that a juror sat who had prejudged the case. Judge Roberts said: "Every criminal has a constitutional right to be tried and punished, if guilty, by an impartial jury. . . . A loose expression of the juror not indicative of a settled mind would not avail the defendant, . . . nor would it avail the defendant had it not been shown by him in his affidavit that he was not apprised of

the prejudice of the juror until after the trial." It is obvious that to permit one to waive the challenge for cause, when the ground therefor is known by him to exist, when the jury is being selected, and to then allow him to raise the same objection at any other stage of the proceeding, would be tantamount to allowing him a second challenge for the same cause in the event he is convicted. In Baker v. State, 3 Texas Crim. App., 525, it is held that in forming the jury each juror must be examined separately, and be subject to challenge for cause or peremptorily separately, and that these things must be done before the juror is impanneled, and that to challenge afterward would not be allowed except for some cause not discoverable on the examination of such person. In Roberts v. State, 30 Texas Crim. App., 291, Judge Davidson says:

"In so far as the juror Scollard is concerned, it is sufficient to say that defendant accepted him and retained him. He was not forced upon the defendant, nor did he seek to have the juror set aside when it was ascertained that there was a possibility of his being prejudiced against him.. His simple suggestion to the court that he would agree to excuse the juror was not sufficient. If the juror was obnoxious to defendant, he should have moved at once, and promptly, to set him aside, if the legal grounds therefor existed. Willson's Crim. Stats., section 2293, for collated authorities. There was no bill of exceptions taken or reserved in this matter until after the trial of the cause and verdict returned into court."

So in Keaton v. State, 41 Texas Crim. Rep., 621, the same learned judge held, as to a juror who had a fixed opinion as to a material part of the State's case, as follows: "While I believe the cause for challenge should have been sustained in regard to this juror, yet this was waived by appellant's refusal to exercise his peremptory challenge which he could have done. When the cause for challenge was over-ruled, he accepted the juror without having exhausted his peremptory challenges. Thereafter, there was no legally objectionable juror placed on the jury. If appellant was not satisfied with the juror Warren, he should have exercised his peremptory challenge. Not having done so, he is in no position to complain."

We might multiply authorities, but the proposition seems sufficiently supported, that appellant having waived his right to challenge the juror Darelik, and having reserved no bill of exceptions at the time to his services as a juror, he cannot thereafter raise the same objection in the motion for new trial. Appellant insists that, regardless of his own attitude, the trial court should have stood him aside. The rule seems to be otherwise. In Greer v. State, 14 Texas Crim App., 179, it was said by Judge White that: "A juror who is subject to challenge for any of the causes mentioned in the statute is not *ipso facto* absolutely incompetent as a juror except in the cases mentioned in the third, fourth and fifth subdivisions of Article 636 (now Article 692). . . . As to disqualifications for any of the other causes, no such

inhibition exists in the law; and as to such other causes, a defendant may waive them, and thereby make the juror competent notwithstanding the existence of such cause." And this case was reversed and remanded because the trial court of his own motion excused certain jurors who had disqualified themselves for favor, whom the accused had not seen fit to challenge for such cause. Our conclusion as to the thirteenth subdivision of Article 692 is that its language is not intended to require the trial court to act independently of a challenge for cause by either party, but to accurately prescribe the test which shall be legally sufficient to sustain such challenge when made. Appellant urges the Jones case, 52 Texas Crim. Rep., 303, 106 S. W. R., 345, as sustaining his contention. The case was decided by eleven jurors. The constitutionality of said jury was raised for the first time in this court and the contention was upheld. The whole body of our law pertaining to felony trials, both statutory and constitutional, seems in harmony on the point that a jury must be composed of twelve men. We do not see the similarity of the Jones case to that now before us; for our statute says in so many words that the accused may waive anything save a trial by jury. The Spear case, 16 App., 98, is again urged as not in accord with our views. Appellant does not bring himself before us within the rules of diligence manifest in said case. A bill of exceptions was taken therein at the time of trial to the action of the lower court in excusing a juror who said he had an opinion which would influence his verdict, and this court upheld such action. The Spear case and the Rockhold case, rendered at the same term of court, 16 App., 577, announce a doctrine in this regard which has never been cited with approval since, and which we think incompatible with the plain language and context of subdivision thirteen of Article 692, C. C. P., and the entire body of our law and the decisions of our own and other States. All of that part of said subdivision thirteen which comes after the first three lines, can only have reference to procedure after a challenge for cause, based on what is contained in said first three lines, has been made. Else, why say that the juror shall first be asked about the conclusion so established? No Court takes it for granted before examination that a juror has a conclusion so established. No interrogator of a juror asks him first if his conclusion so established will influence his verdict; and yet the exact language of said subdivision following the first three lines thereof is as follows: "For the purpose of ascertaining whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative he shall be discharged." The literalist would compel the first question to a juror when this part of his examination is reached to be: "Is it your opinion that your conclusions as to the guilt or innocence of the defendant so established will influence your verdict?" This would be so manifestly wrong as to need no discussion. Rather would we apply the rule of construction which would uphold the law and make this

ground one of challenge for cause as it is intended, and not one for peremptory challenge. We would hold that when in the course of his examination by either party a juror so far discloses that he has formed a conclusion which might influence his verdict as to elicit a challenge for that cause, the issue is thus joined, and is for the court, and for the purpose of ascertaining if the cause made the basis of such challenge exists, the court shall ask substantially if such conclusion so established will influence his verdict, and upon receiving an affirmative answer, the challenge shall be sustained and the juror discharged; if the answer be negative, the issue still being joined, the court shall further conduct or cause to be conducted, the examination, and may overrule the challenge and allow the juror, or may sustain it and discharge him. To hold it the duty of the trial court to act under subdivision thirteen *supra* without challenge would be for this court to strike from said Article 692 said subdivision and to write into our statutes a new ground of disqualification and also a new ground for motion for new trial This we decline to do.

Regarding the separation of the jury, we have again examined the facts, as well as our opinion relative to this matter. The juror who had separated from the others testified that when the court adjourned the people flocked out, jury and all, and that he got mixed up in the dark, couldn't tell one man from the other and that he walked down the stairway and the people who were with him went on to the street and he knew then they were not the jury; that he walked to the corner of the courthouse, and that he met a man and asked him which way the jury went. This man was the district attorney, who told him to go at once to where the jury was. He at once returned to the head of the stairs and rejoined the jury. He testified that not a word was said to him about the case by anyone, and that nothing else transpired except what has been stated. No controversy of these facts appears in the record. We are still of the opinion that this was not such separation as to require reversal. We have always held that in such case, if the State satisfactorily met the presumption of injury from such separation by affirmative proof to the contrary, the mere fact of a short separation such as this would not constitute reversible error. In addition to the authorities formerly cited, see, Jack v. State, 26 Texas, 1; Stewart v. State, 31 Texas Crim. Rep., 154; Boyett v. State, 26 Texas App., 703; Defriend v. State, 22 Texas App., 570; Mauny v. State, 85 Texas Crim. Rep., 184, 210 S. W. R., 963. We have again reviewed our opinion, together with the portion of the motion complaining of the action of the trial court in admitting evidence of gambling transactions and debts between appellant and the deceased. These are material matters affecting appellant's motive for the homicide, and we are unable to conclude that any error appeared therein.

The rejection of the statement of appellant's wife at some time subsequent to the shooting, which was offered in evidence, but not admitted, is again urged as ground for error. As far as is disclosed by

allegations in the bill, appellant's wife was a bystander, not participating in the shooting, and it was not shown that the statement offered in evidence was made in the presence of appellant, nor how near same occurred in point of time to the shooting, nor does said statement appear to be more than the opinion of the wife. Statements of bystanders made a minute after the shooting have been rejected. Casey v. State, 50 Texas Crim. Rep., 392, 97 S. W. R., 496; see also Wade v. State, 48 Texas Crim. Rep., 513; Majors v. State, 58 Texas Crim. Rep., 39; Parr v. State, 36 Texas Crim. Rep., 493; Freeman v. State, 46 Texas Crim. Rep., 320.

Being unable to agree with any of the contentions made by appellant in his motion for rehearing, same is overruled.

*Overruled.*